**John FAZZINO, Appellant,**

**v.**

**Antoinette V. GUIDO, Joe C. Patranella, Josephine P. Patranella, Mrs. Frank L. Salvato a/k/a Mrs. Gussie Salvato, Mary Salvato Bush, Josephine Salvato Varisco, Ethelena Salvato Zubik, Marie Angonia, Lucille Varisco, Dorothy V. Donaho, Mudville Gin Company, Lula Mae Perrone, Margaret C. Curtis, Mrs. Lee J. Court, Don Angonia, Victor Canavespi, Betty Lee Canavespi Sprague, and Frances Falsone Reistino, Appellees.**

**No. 01–91–00041–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

July 16, 1992.

Rehearing Denied Aug. 31, 1992.

---

C. Randall Michel, Houston, for appellant.

Bill Youngkin, Houston, for appellees.

Before DUGGAN, MIRABAL and WILSON, JJ.

## OPINION

WILSON, Justice.

Appellant, John Fazzino, appeals from a judgment entered below following a jury verdict in which a roadway bordering and/or on appellant's property was found to be dedicated for the benefit of the general public. The trial court also ordered that appellant remove any impediment placed in the roadway within his property lines. We affirm.

The roadway in question is a dirt road varying from 10 to 23½ feet in width. The road runs on and along the property lines of appellant and his neighbors. A number of appellees, all of whom are neighbors of appellant, currently use this road, and have done so for a number of years. The road is referred to by the local residents as "Mudville Road," but it is not mentioned in the legend of the list of county roads, and there are no identifying street signs.

The dispute arose when appellant plowed into the portion of the roadway on his property. Appellant's actions made the road impassable. In response to his plowing the roadway, 19 of his neighbors, appellees, filed suit seeking an injunction to halt appellant from treating the road as his private property. The trial resulted in a jury verdict that determined appellant's actions were improper because the road had been dedicated for the benefit of the public. The trial court entered judgment on this jury verdict. Based on his belief that the roadway is his private property and had not been dedicated for public use, appellant now appeals from the trial court's judgment formalizing the jury's decision.

In his first two points of error, appellant claims that there was no evidence, or in the alternative, the evidence was legally and factually insufficient to support the judgment finding the road to have been dedicated. In reviewing a no evidence or legal insufficiency point, the reviewing court must consider only the evidence tending to support the jury finding. *Sherman v. First Nat'l Bank*, 760 S.W.2d 240, 242 (Tex.1988). When reviewing a claim of factual insufficiency, an appellate court should set aside a verdict only if the evidence is so weak or the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986).

The evidence at trial reflects that the predecessors in title to appellant's and appellees' land originally established Mudville Road for the public and themselves to use to reach a ferry that crossed the Brazos River. This ferry was in existence at this location as early as 1828.

A number of witnesses testified that they and the public had used the road for over 60 years. Luke Scamardo, the oldest witness to testify at 94 years of age, said that he had farmed in the area as early as 1925. He further stated that at that time the road was travelled by all the farmers in the area. Margaret Curtis, who was born in the area in 1928, testified that during her childhood her father used the road to haul cotton. She also said that she and her husband operated a business from 1950 through 1963, and that the general public would use Mudville Road to reach the business. Josephine Patranella, 72 years of age, testified that she was born on a tract adjacent to the road. She stated that dur-

ing her entire lifetime her family and other landowners in the area used Mudville Road. Another resident, Mr. Angonia, testified that the general public used the road to go to the Brazos River. He also said that the general public used it more than the farmers in the area. Thus, the evidence at trial clearly shows that Mudville Road has been used by the public as far back as 1925, and quite possibly as early as 1828. There was no evidence of any objection to the use of the road by anyone until appellant, who purchased the property in 1959, plowed into it in 1988.

The issue in this case is whether the evidence of the long and continued use of Mudville Road is sufficient to prove that it had been dedicated to the public by appellant's predecessors in interest. Dedication occurs when a landowner sets apart his land for public use. *Ford v. Moren*, 592 S.W.2d 385, 390 (Tex.Civ.App.—Texarkana 1979, writ ref'd n.r.e.). Dedication can occur expressly or impliedly. *Viscardi v. Pajestka*, 576 S.W.2d 16, 19 (Tex.1978). In the present case, appellees have maintained that appellant's predecessors in title impliedly dedicated the roadway, as is evidenced by the unobjected to use of the road by the general public for a number of years. Whether a road has been dedicated for public use is a question of fact. *Broussard v. Jablecki*, 792 S.W.2d 535, 537 (Tex. App.—Houston [1st Dist.] 1990, no writ).

In his defense, appellant correctly asserts the general rule in these cases, which is that an owner's donative intent may not be implied from evidence that shows only that the public used the land for a long time without objection from the landowner. *Barstow v. State*, 742 S.W.2d 495, 506 (Tex.App.—Austin 1987, writ denied). However, appellant has failed to take into account the corollary to the general rule, which states that evidence of long and continued use by the public raises a presumption of dedication by the owner when the origin of the public use and the ownership of the land at the time it originated cannot be shown, one way or the other, due to the lapse of time. *Id.* at 507. For this corollary to apply, the origin of the

public use and the ownership at that time must be "shrouded in obscurity, and no proof can be adduced showing the intention of the owner in allowing the use." *Dunn v. Deussen*, 268 S.W.2d 266, 269 (Tex.Civ. App.—Fort Worth 1954, writ ref'd n.r.e.).

This corollary applies to the present case. All of the landowners who testified said that the road was used by the public as far back as they could remember. None of the landowners could testify to the intentions of the owner when such use began. In fact, there was some evidence indicating that the road may have been used by the public as early as 1828 to reach the ferry at the Brazos River. Based on these facts, it is clear that the origin of the use of the road cannot be shown due to lapse of time. Consequently, the jury's verdict that an implied dedication of Mudville Road had occurred during ownership of the land by appellant's predecessors in title is not so against the great weight and preponderance of the evidence as to be clearly unfair and unjust. Appellant's points of error one and two are overruled.

In his third point of error, appellant asserts that there is no evidence, or in the alternative, insufficient evidence to support the finding that the roadway serves a public purpose. However, the evidence at trial showed that the public did in fact use the road, as was discussed in the first two points of error. For example, Don Angonia testified that the public probably used the road more than the farmers in the area to reach the Brazos River. Therefore, appellant cannot substantiate his claim that the public is not served by the roadway. Based upon the testimony at trial, it was not against the great weight and preponderance of the evidence for the jury to find that the road served a public purpose. Appellant's third point of error is overruled.

In his fourth point of error, appellant argues that Mudville Road cannot be a public road because any use by the public has been abandoned as a matter of law. Appellant did not plead abandonment, nor did he request a jury question on it. The failure to plead abandonment, an affirmative defense, results in its waiver. *San*

*Jacinto Sand Co. v. Southwestern Bell Tel. Co.*, 426 S.W.2d 338, 344 (Tex.Civ. App.—Houston [14th Dist.] 1968, writ ref'd n.r.e.). Therefore, appellant has failed to properly preserve this issue.

■ Even if appellant had preserved this issue, his argument would not be meritorious. In reviewing a "matter of law" challenge, an appellate court first examines the record for evidence that supports the finding, while ignoring all evidence to the contrary. *Holley v. Watts*, 629 S.W.2d 694, 696–97 (Tex.1982). If there is no evidence to support the finding, the reviewing court then examines the entire record to determine if the contrary position is established as a matter of law. *Id.*

■ In reviewing the record, it is clear that the road has not been abandoned as a matter of law. To prove an abandonment, appellant must prove that there was an intent to abandon the public roadway, and the intention must be shown by clear and satisfactory evidence. *San Jacinto Sand Co.*, 426 S.W.2d at 344. Appellant bases his claim of abandonment on the fact that the road no longer extends all the way to the Brazos River, but terminates 1,500 to 2,000 feet from the river, and that there is a locked gate between where the road terminates and the river.

Appellees concede that the road is no longer used as a travelway to the ferry to cross the Brazos River. Nonetheless, the road is still being used by the public to go to the Brazos River. Don Angonia testified that he believed that the road was used more by the general public than the farmers in the area. Another witness who lives in the area, Tony Varisco, testified that he and other people use the roadway. Josephine Patranella testified that 18 families use the road, and that for some of them it is the only egress from their property.

The evidence does not establish, as a matter of law, that there was an intent to abandon the road. On the contrary, the continued use of the road indicates that the public desired to maintain Mudville Road as a public travelway. Appellant's fourth point of error is overruled.

■ Appellant asserts in his fifth point of error that fundamental error occurred because the trial court instructed the jury to use the wrong standard of proof with which to measure the evidence. The trial court gave the jury the standard definition of "preponderance of the evidence" to determine its answers to the questions presented to it. Appellant argues that the proper standard of proof in a case like this is "clear and convincing evidence." However, case law holds that in a case involving dedication, a "preponderance of the evidence" is the proper standard of proof. *Owens v. Hockett*, 151 Tex. 503, 251 S.W.2d 957, 958 (1952). Appellant's fifth point of error is overruled.

■ Appellant alleges in his sixth point of error that the trial court committed fundamental error by encouraging the questioning of witnesses by jurors during the trial. The procedure that appellant complains of is as follows:

1. After both lawyers had concluded their respective direct and cross-examination, the trial court asked the jurors for written questions.

2. The jury and witness left the courtroom while the admissibility of the question was determined.

3. The trial court read the question to both lawyers and they were given the opportunity to object to the questions.

4. The jury and witness were brought back into the courtroom and the admissible questions were read to the witness verbatim.

5. After the witness answered, both lawyers were allowed to ask follow-up questions limited to the subject matter of the juror's question.

This appears to be a case of first impression in a civil cause of action in Texas. However, two criminal cases recently decided by the Fourteenth Court of Appeals involved this same issue. *See, e.g., Allen v. State*, 807 S.W.2d 639 (Tex.App.–Houston [14th Dist.] 1991, pet. granted); *Buchanan v. State*, 807 S.W.2d 644 (Tex. App.–Houston [14th Dist.] 1991, pet. granted). Since the petitions for discretionary

review have been granted in each of these cases, however, they cannot be relied upon as primary authority. Nevertheless, the court in these two cases did determine that the trial court's allowing the jurors to propound questions to the witnesses was not improper. *Allen,* 807 S.W.2d at 642, *Buchanan,* 807 S.W.2d at 646.

The Fifth Circuit has stated:

There is nothing improper about the practice of allowing occasional questions from jurors to be asked of witnesses. If a juror is unclear as to a point in the proof, it makes good common sense to allow a question to be asked about it. If nothing else, the question should alert trial counsel that a particular factual issue may need more extensive development. Trials exist to develop the truth.

*United States v. Callahan,* 588 F.2d 1078, 1085 (5th Cir.), *cert. denied,* 444 U.S. 826, 100 S.Ct. 49, 62 L.Ed.2d 33 (1979).

In the present case, both parties were afforded great procedural protection by the manner in which the questions were asked, as is outlined in the five steps describing the procedure above. Additionally, the record reveals that neither of the lawyers at trial objected to this procedure, and that neither side was injured by any of the questions from the jurors. With these procedural safeguards, there was no harm to appellant, and no fundamental error. Appellant's sixth point of error is overruled.

■ Appellant argues in his seventh point of error that the trial court committed reversible error when it failed to strike venire person Jennifer Moreland for cause in voir dire. Appellant claims that Moreland should have been stricken for cause based on the following statement by her during voir dire:

It is hard to explain but, because of my religious beliefs, there are certain things I think, even though the law may state one thing, that people as human beings have to take into account other people's feelings, and the access to their house or whatever it is even though legally that land may be theirs if it is going to inconvenience other people, I think we as people can maybe inconvenience ourselves in

hopes of what that means later on, as opposed to just today.

In response to this statement, the court gave Moreland an example of an instruction that might be given at the end of the trial, and asked her the following question:

[D]o you believe that you could follow those instructions and answer the questions based upon the evidence and the instructions and put aside from the decision what your moral beliefs might be, or do you think that your moral beliefs would control in a given cause over what the judge's instructions on the law were?

Moreland responded:

"I think I will answer the question truthfully based on the facts that were presented, although I may not feel good about what they may mean, but yes, I can answer the questions truthfully."

After this response the following discussion occurred between Moreland and appellant's lawyer, Mr. Cofer:

Cofer: A moment ago, Ms. Moreland, you indicated to me that if you, in your opinion, felt that there was greed involved in this particular case you would not follow the Court's instruction nor with the laws but you would follow your religious beliefs. Is that correct? Is that a fair summary?

Moreland: That is not correct. No, sir.

Cofer: What did you mean?

Moreland: That like I said, I just—I may be able to say that yes that's his property, but when I go home, I may not feel good about it although that may not matter. But no, I won't break the law or lie.

Cofer: Well, did I misinterpret then your statement that if you saw that it was greed, that you would follow your religious feelings and find against the person?

Moreland: No. What I meant was that may be the way I feel. I will not break the law or lie.

In cases involving whether a juror should have been stricken for cause based on bias or prejudice, the following rule is applied:

If evidence conclusively establishes that a jury panelist had a state of mind in

favor of or against a litigant or type of suit so that the panelist would not act with impartiality in the cause, an appellate court must hold that the panelist was disqualified as a matter of law; however, whenever the evidence does not conclusively establish the panelist's disqualification as a matter of law, the appellate court must consider the evidence in a light most favorable to upholding the trial court's ruling.

*Bullard v. Universal Underwriters Ins. Co.*, 609 S.W.2d 621, 623–24 (Tex.Civ. App.—Amarillo 1980, no writ).

In the instant case, it cannot be said that Moreland's state of mind in favor of or against one of the litigants or the type of suit would prevent her from acting impartially. She stated that she would answer all questions truthfully regardless of her personal religious beliefs. Thus, Moreland should not have been stricken for cause as a matter of law. When considering the evidence in a light most favorable to the trial court's ruling, Moreland was not biased in such a way that would have any effect on her ability to truthfully answer the questions posed to her. She stated that even if her religious beliefs led her to believe a certain way, that she would not lie, but would answer the questions honestly. Appellant's seventh point of error is overruled.

In his eighth point of error, appellant asserts that he was denied a fair trial by an accumulation of acts and conduct that occurred throughout the trial. Appellant first complains of the following statement made by appellees' lawyer during his opening statement:

> I would tell each and every one of you that if you have—see me kind of nodding off this afternoon, it is because the Judge and Mr. Pearson and a couple of the jurors and all my clients and I went to eat at Los Nortenos and so we just might start nodding off during some part of the trial. It's not because we are not interested; it's because we are doggone sleepy.

Appellant argues that this statement shows that appellees' lawyer violated the rule that jurors and attorneys are not to fraternize before the conclusion of the trial. However, the record reveals that appellees' lawyer was just making a humorous remark, and furthermore, the evidence does not show that the jurors and appellees' attorney actually dined together. The evidence only proves that they ate at the same restaurant. Therefore, this statement by appellees' attorney is not evidence of any misconduct.

■ Appellant next complains that a number of appellees remained in the courtroom while witnesses testified despite the fact that "the Rule" had been invoked. This is not error, though, because parties to the case can remain in the courtroom during testimony even if "the Rule" has been invoked. TEX.R.CIV.P. 267.

■ During the trial, a Mrs. Winters announced to the courtroom that one of the appellees was coaching another appellee while the second appellee was testifying. Mrs. Winters made this announcement from the gallery. In response to her outburst, the court made the following statement:

> I don't want any more comments, please, from anybody in the courtroom who is not testifying as a witness or asking questions as an attorney. That goes for folks seated back in the chairs there, as well as other parties in the courtroom.

Appellant argues that this admonishment by the trial court sent an anti-appellant message to the jury because Mrs. Winters' husband later testified for appellant. However, this statement by the court does not create error because a judge is allowed discretion in expressing himself while controlling the trial of a case. *Texas Employers Ins. Ass'n. v. Drapper*, 658 S.W.2d 202, 209 (Tex.App.—Houston [1st Dist.] 1983, no writ). Reversal of a judgment should not be ordered unless the remark by the court resulted in the rendition of an improper verdict. *Id.* Appellant has not shown how this general remark by the court has resulted in an improper verdict.

Appellant also complains that a disproportionately large number of questions

posed by the jurors were asked of appellant's main witness, and that the court allowed 25 questions to be asked of appellant's witnesses while only 12 were asked of appellees' witnesses. Appellant sets forth no authority citing why this occurrence was error, but states only that it sent a message of partiality for appellees to the jury. Such a contention is not supported by the record or any case law.

Appellant's final point of error is overruled, and the judgment is in all things affirmed.