

NUMBER 13-08-002-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

HOWARD ROSS, ALTON ROSS,                          **Appellants,**
AND GWENDOLYN ROSS,

**v.**

WALTER WOMACK,                                      **Appellee.**

---

### On appeal from the 377th District Court
### of Victoria County, Texas

---

# MEMORANDUM OPINION

### Before Justices Yañez, Garza, and Vela
### Memorandum Opinion by Justice Vela

This is an appeal from the trial court's order granting a no-evidence motion for summary judgment in favor of appellee, Walter Womack, and denying a traditional summary judgment motion filed by appellants, Howard Ross, Alton Ross and Gwendolyn

Ross (the "Ross family"). Womack sought a declaratory judgment that the Ross family had no right to cross his land in order to access their property. By ten issues, the Ross family urges that the road in question was impliedly dedicated to public use before Womack acquired the property; that they have an easement by acquiescence and estoppel; and that the original land patents impliedly granted an easement across property now owned by Womack.[1] The Ross family seeks rendition in their favor or remand of the case for trial. Womack argues that no fact issues have been raised on the easement by estoppel claim or the implied public dedication claim; that there was no implied state grant as a matter of law; that the "law of the case" doctrine precludes litigation of several of the Ross family's claims; and that the trial court had the discretion to grant attorney's fees. We reverse and remand.

## I. PROCEDURAL HISTORY OF THE CASE

This case is about Womack's decision to cut off the Ross family's sole means of access to their property. Womack owns all of the property surrounding the Ross family property, including the road that provides the only means to access their land. The evidence was undisputed that the Ross family and their ancestors had always used the road to reach their property.

This case was previously appealed to this Court. *Ross v. Womack*, No. 13-04-571-CV, 2006 WL 3628042 (Tex. App.–Corpus Christi, Dec. 14, 2006, no pet.) (mem. op.) ("*Ross I*"). In *Ross I*, this Court reversed and remanded the summary judgment granted in favor of Womack because the Ross family brought forward more than a scintilla of

---

[1]In its reply brief, the Ross family abandons its eighth issue wherein they claimed that an easement was part of the original land patent issued by the State of Texas.

2

probative evidence raising a genuine issue of material fact with respect to the Ross family's easement by estoppel claim. *Id.* at *6. Additionally, this Court determined that the Ross family's summary judgment evidence with respect to their easement by necessity claim was insufficient to raise a fact issue. *Id.* at *7. This Court did not rule on any other claim raised by the Ross family.

After the case was remanded, the Ross family amended their pleadings to assert a claim of implied dedication, implied state grant, and a claim against Womack for trespass or interference with the Ross family's right to use the road to reach their property. Womack filed a no-evidence motion for summary judgment, claiming that there was no evidence that either the Ross family or their ancestors believed or acted upon representations by Womack and his ancestors that they had a right to use the road. Womack's motion on the easement by estoppel claim was granted by interlocutory summary judgment. Womack then filed a second no-evidence motion on the Ross family's remaining claims.

The Ross family responded and also filed a motion for traditional summary judgment, urging that they had established as a matter of law their claims of implied dedication of the road, easement by acquiescence and estoppel and easement by implied state grant. The final summary judgment, containing a recital that the judgment is final, states that "[d]efendants do not have any easement upon Plaintiff's property made the subject of the suit." The trial court granted final summary judgment in favor of Womack and against the Ross family on all claims and denied the Ross family's motion for summary judgment.

## II. FACTUAL BACKGROUND

In 1879, the Ross family ancestors, Fred Rydolph and Nash Harvey, purchased 200

3

acres of land in Victoria county that was known as the Rydolph Ranch. At about the same time, James McFaddin, Womack's great-grandfather, began purchasing land in Victoria County. Eventually, the McFaddin property, known as the McFaddin Ranch, encompassed more than 34,700 acres and, by 1882, completely surrounded the 200-acre Rydolph Ranch. Alton and Howard Ross own portions of the property within the Rydolph Ranch. Their mother, Gwendolyn Ross, inherited 34.449 acres of property known as the Scott property and 3.2 acres of the Rydolph Ranch. Through inheritance and by purchase, the Ross family now owns approximately eighty acres located within the Rydolph Ranch and the Scott property. Womack, as a McFaddin heir, came to own all of the property surrounding the Ross family's property when there was a partition of the McFaddin property in 1990. Womack agreed in his deposition that the Ross family had always used the road—until now. He stated that management of the wildlife, pastures and agricultural operations were changing and he felt he wanted to have better control over his property. Womack agreed that without his permission, the only way for the Ross family to access their property was by air.

In August 1992, prior to Womack's decision to block the Ross family's access to their property, Womack entered into a hunting lease with Howard and Alton. Thereafter, Womack installed a locked gate at the entrance of the road. At first, he gave keys to the Ross family, as well as oilfield workers who utilized the property. In the summer of 2002, Womack cancelled the hunting lease and offered to buy the Ross family's property. The Ross family would not sell. Subsequently, the Ross family received a letter from Womack's attorney terminating their right to cross Womack's property to access their land. Womack then filed this lawsuit to determine if the Ross family had easement rights to obtain ingress

4

and egress to their property.

### III. STANDARD OF REVIEW

We review the trial court's summary judgment de novo. *Provident Life and Accident Ins. Co. v. Knott,* 128 S.W.3d 211, 215 (Tex. 2003). The standards of review for traditional and no-evidence summary judgments are well established. In a traditional summary judgment, the movant has the burden to establish that there are no material issues of fact. TEX. R. CIV. P. 166a(c); *Rhone-Poulenc, Inc. v. Steel,* 997 S.W.2d 217, 222 (Tex. 1999); *Mercier v. Sw. Bell Yellow Pages, Inc.,* 214 S.W.3d 770, 773 (Tex. App.–Corpus Christi 2007, no pet.). Evidence favorable to the non-movant will be taken as true, every reasonable inference will be indulged in the non-movant's favor, and doubts must be resolved in the non-movant's favor. *Knott,* 128 S.W.3d at 215.

In contrast, a no-evidence summary judgment is the same as a pretrial directed verdict, and we apply the same legal sufficiency standard on review. *Mack Trucks, Inc. v. Tamez,* 206 S.W.3d 572, 581–82 (Tex. 2006); *Ortega v. City Nat'l Bank,* 97 S.W.3d 765, 772 (Tex. App.–Corpus Christi 2003, no pet.) (op. on reh'g). We review the evidence in the light most favorable to the non-movant. *City of Keller v. Wilson,* 168 S.W.3d 802, 825 (Tex. 2005). The non-movant must produce evidence to raise a genuine issue of material fact in order to defeat a no-evidence motion for summary judgment. TEX. R. CIV. P. 166a(i). To determine whether the non-movant has met its burden, we review the evidence in the light most favorable to the non-movant, crediting such evidence that reasonable jurors could credit and disregarding contrary evidence unless reasonable jurors could not. *Tamez,* 206 S.W.3d at 582.

IV. ANALYSIS

1. Law of the Case

Womack argues as a prelude to his summary judgment arguments that the Ross family is prohibited, by the law of the case doctrine, from re-litigating the issues of easement by implied dedication, prescription, or necessity. Law of the case applies only to prior determinations of issues of law. *Turboff v. Gertner, Aron & Ledet Invs*., 840 S.W.2d 603, 608 (Tex. App.–Corpus Christi 1992, writ dism'd). The law of the case doctrine has been defined by the Texas Supreme Court as "that principle under which questions of law decided on appeal to a court of last resort will govern the case throughout its subsequent stages." *Hudson v. Wakefield,* 711 S.W.2d 628, 630 (Tex. 1986). By narrowing the issues in successive stages of the litigation, the law of the case doctrine attempts to achieve uniformity of decision as well as judicial economy and efficiency. *Pitman v. Lightfoot,* 937 S.W.2d 496, 513 (Tex. App.–San Antonio 1996, writ denied); *Dessommes v. Dessommes,* 543 S.W.2d 165, 169 (Tex. Civ. App.–Texarkana 1976, writ ref'd n.r.e.). The doctrine is based on public policy and is aimed at putting an end to litigation. *Pitman,* 937 S.W.2d at 513. The doctrine has no application, however, where a party amends his pleadings and adds a new cause of action following reversal and remand from the first proceeding. *See Berryman v. El Paso Natural Gas Co.,* 838 S.W.2d 610, 614 (Tex. App.–Corpus Christi, 1992), *rev'd on other grounds*, 858 S.W.2d 362 (Tex. 1993); *Kropp v. Prather,* 526 S.W.2d 283, 286 (Tex. Civ. App.–Tyler 1975, writ ref'd n.r.e.). If the first appeal is from the granting of a summary judgment motion, the doctrine will not apply if the parties or causes of action are different under the subsequent proceeding, or

6

if the summary judgment evidence offered in support of the second motion materially differs from that offered in support of the first motion. *See Hudson*,711 S.W.2d at 631; *Kropp,* 526 S.W.2d at 286.

In *Ross I*, this Court reversed and remanded on the easement by estoppel issue. The Court also held that there was no evidence on the claim of easement by necessity. On remand, the Ross family added new causes of action, particularly a claim of implied dedication. The claim is not barred by the law of the case doctrine. The only claim that is barred is the easement by necessity claim as that was the only claim that was dealt with in *Ross I.* This Court, in *Ross I*, did not attempt to limit the remand to only easement by estoppel. The Ross family's newly pleaded claim of implied dedication is a different cause of action from either prescriptive easement or easement by necessity*. See Reed v. Wright*, 155 S.W.3d 666, 672 (Tex. App.–Texarkana 2005, pet. denied) (setting forth elements of implied public dedication); *Brooks v. Jones*, 578 S.W.2d 669, 673 (Tex. 1979) (setting forth elements of a prescriptive easement); *Duff v. Matthews*, 311 S.W.2d 637, 641 (Tex. 1958) (setting forth elements of easement by necessity). The Ross family's amended pleadings are different, were not ruled on in our prior opinion, and do not constitute law of the case.

2. Easement by Estoppel

By their first, fifth, sixth and seventh issues, the Ross family argues that they acquired an easement by estoppel. In order to create an easement by estoppel, the following elements must exist: (1) a representation was communicated, either by word or by action, to the promisee; (2) the communication was believed; and (3) the promisee relied on the communication. *Storms v. Tuck*, 579 S.W.2d 447, 452 (Tex. 1979); *see Ross*

7

*v. Womack,* 2006 WL 3628042 at *6. Application of an easement by estoppel depends on the unique facts of each case. *Wilson v. McGuffin*, 749 S.W.2d 606, 610 (Tex. App.–Corpus Christi 1988, writ denied); *Ross v. Womack,* 2006 WL 3628042 at *6.

In Womack's no-evidence motion for summary judgment, he urges that the Ross family produced no evidence of the elements of belief and reliance. In response, the Ross family introduced evidence that they claim establishes both a belief that they had a right to use the road and that they relied upon that belief.

The relevant case law suggests the quantum of proof required to establish the belief and reliance elements. For example, in *Holden v. Weidenfeller*, the San Antonio Court of Appeals affirmed an easement by estoppel claim based on facts similar to the ones here. *Holden v. Weidenfeller*, 929 S.W.2d 124, 131-32 (Tex. App.–San Antonio 1996, writ denied). In *Holden*, the landlocked owners used the road at issue continuously for ingress and egress for thirty-five years before the opposing landowners attempted to lock them out. *Id.* at 131. Based upon previous use of the road, the landlocked owners bought their property with the understanding that the road gave them access to the property; the landowners made no objection to the use of the road for over seven years after they purchased the property, and the landowners allowed the landlocked owners to put their own lock on the gate to gain access. *Id.* at 131-32. The *Holden* court stated that the evidence showed that the landlocked owners and their predecessors built a house on the property and had spent significant amounts of money improving the property over the years. *Id.* at 132. The court found that there was evidence from which the trial court could have inferred that the owners of the road led the Weidenfeller's to believe that they had

8

a right to use the road and that the belief was relied upon. *Id*. Notably, the court points out that easement by estoppel is obviously an equitable doctrine and is not applied as strictly as an implied easement. *Id.* at 131.

Likewise, in *Wallace v. McKinzie*, the landlocked owners used the road at issue for ingress and egress for over seventy years before they were denied access, and for seventy years, there had been no opposition to the landlocked owners' use of the road. 869 S.W.2d 592, 596 (Tex. App.–Amarillo 1993, writ denied); *see contra Allen v. Allen*, No. 07-06-0150-CV, 2008 WL 3890120 at *14 (Tex. App.–Amarillo Aug. 21, 2008, no pet. h.). The *McKinzie* court held that through their permissive and acquiescing behavior, the landowners had engaged in representations by their conduct. *Id*. at 596. The court found that evidence, by itself, was legally sufficient evidence to support the jury's finding that the landowners represented that certain rights existed to use the Wallace's property. The court also found that same conduct supported the jury's determination that the landlocked owners relied on the representation. *Id*.

Also, in *Exxon Corp. v. Schutzmaier*, the court found an easement by estoppel was created where the only means of ingress and egress was by the road at issue and the access was used for twenty-two years without interference from the defendant. *Exxon Corp. v. Schutzmaier*, 537 S.W.2d 282, 285 (Tex. Civ. App.–Beaumont 1976, no writ). Additionally, the landlocked owners had expended money on their property to make improvements in reliance upon an express easement obtained by their predecessors. The *Exxon* court also noted that the doctrine of easement by estoppel has not been applied with the same strictness as easements by implication. *Id*. at 285.

Here, evidence was submitted as summary judgment proof that is at least as compelling as that set forth in *Holden, Wallace* and *Schutzmaier.* For instance, the Ross family and their ancestors used the road for over seventy years without interference, owners of the Rydolph property bought the Scott property knowing that the McFaddin property was the only way to access it. Womack did not object to the Ross family's use of the property for more than twelve years after he inherited it and it was partitioned. Womack gave the Ross family a key for approximately ten years after he acquired the property and the Rydolph and Ross families either built homes or made improvements without objection.

Previously, Womack's predecessors-in-title represented through action that the Ross family predecessors had a right to use the road because they had always used it. The Ross family introduced summary judgment evidence that they had repaired a home on their property for the purpose of having a place to hunt and that they maintained a family cemetery. They introduced the Kuy Creek easement, entered into in 1916 by J.A. McFaddin, Fred and Rosa Rydolph, and Nash Harvey. The language of the easement suggests that McFaddin was going to build a bridge and the Rydolphs and Harvey could use the road and bridge when it was built. It would make no sense that the Rydolphs and Harvey would have granted McFaddin an easement in exchange for the right to use a road and a bridge that they could not otherwise access if they did not have the right to use the road that would allow them to reach that location.

Iva Woods, the great granddaughter of Nash Harvey and granddaughter of Mamie Harvey, testified that the Nash Harvey family built a residence on the property. Gwendolyn Ross testified by affidavit submitted as summary judgment evidence: "My family always

10

believed we had a right to use the McFaddin Road to get to our property, and we relied on that right every time we used the road . . . ." Alton and Howard testified similarly.

The evidence showed that the Ross family had repaired a home after Womack acquired the property. Womack gave them keys after he installed a lock on the gate. All of the actions by the Ross family and their ancestors, the McFaddin family and their ancestors, and even Womack himself, shows a belief that the Ross family had a right to access their property by the road. There was also controverting evidence from Claude McCan, a seventy-six-year-old relative of Womack who worked on the McFaddin properties, who testified that he knew of no written agreement between the two families regarding the use of the roads. According to McCan: "They just went and we didn't stop them."

While Womack argues that there was no fact issue raised on the "belief" element of the estoppel claim, it is clear the issue was raised from both the evidence attached as summary judgment proof and the case law, which recognizes that reliance necessarily includes belief. *See Sands v. Lemmerhirt*, 262 S.W. 125 (Tex. Civ. App.–Dallas 1924, no writ) (stating that reliance upon representations necessarily implies a belief in their truth). In *McKinzie*, the court held that through permissive and acquiescing behavior, the owners of the servient estate engaged in representations by their conduct. *McKinzie,* 869 S.W.2d at 596. The court further opined: "This same conduct-evidence and reasonable inferences therefrom also support the jury's determination that the McKinzies relied on the representation." *Id.*

The Ross family has raised a fact issue with respect to the elements of their easement by estoppel claim. Because their right to such an easement has not been

11

established as a matter of law, however, we must again remand this case to the trial court. Issue number six is sustained.

3. Implied Public Dedication

By issues two, three, and four, the Ross family urges that it established as a matter of law that the roadway in question was impliedly dedicated to public use, or alternatively, that they presented more than a scintilla of evidence that the origin of the road was shrouded in obscurity, that there is no evidence of contrary intention of the landowner at the time the road was created, and that there has been long and continuous public use of the road.

Implied dedication requires a clear and unequivocal intention on the part of the landowner to appropriate the land for public use. *Gutierrez v. County of Zapata*, 951 S.W.2d 831, 838 (Tex. App.–San Antonio 1997, no writ). Four elements must generally be proven: (1) the landowner's actions allow the belief that he or she intended to dedicate the road to public use; (2) he or she was competent to dedicate the road; (3) the public relied on the owner's acts and will benefit from the dedication; and (4) the offer of dedication was accepted. *Id*. at 839.

The Ross family seeks to use an exception to general rule. When an alleged implied dedication occurred so far in the past that there is no available proof of the intent of the owner, evidence of actual use, the purpose of the use, permission for the use, the nature of the road itself and maintenance of the road by the government or by neighbors can all be important factors for our review. The long and continuous use of a road by the public raises a presumption of donative intent. *Betts v. Reed*, 165 S.W.3d 862, 868 (Tex. App.–Texarkana 2005, no pet.). For this presumption to apply, the ownership of the land

12

when the road originated must be shrouded in obscurity so that no evidence of intent by the owner is available. *Id*. Dedication is presumed when the public engaged in long and continuous use of the road whose origin is shrouded in obscurity. *Reed v. Wright*, 155 S.W.3d 666, 671-72 (Tex. App.–Texarkana 2005, pet. denied). In *Wright*, the court found that the origin of Cherry Lane was shrouded in obscurity because there was no evidence of the identity and no direct evidence of the intent of the owner who originally established the road. *Id*. at 672.

The Ross family urges in its summary judgment motion that the origin of McFaddin Road is shrouded in obscurity. They correctly assert that various individuals used the road for a long period of time before Womack erected a gate to prevent them from using the road. However, they have not established that the road had a long and continuous public use. According to McCan's deposition, the ranch was open and there was "a lot of traffic in and out of there." Among those utilizing the road were Mamie Harvey, Jim Rydolph, Sophronia Martin, Wesley Rydolph, some tenant farmers, and others. Iva Woods testified that as a child she used the McFaddin Road to visit her grandmother. There were no signs indicating the road was private or closed.

However, these factors do not appear to relate to an intention to dedicate the road as public. In order to gain the benefit of this doctrine, the Ross family was required to prove that no contrary showing of the owner's intention existed. To be a dedicated public road the road also had to be open to all who would have occasion to use it. *Gutierrez,* 951 S.W.2d at 841.

The test for the application of the "shrouded in obscurity" rule comes into play when the origins of the public use and the ownership of the land at the time it originated cannot

13

be shown or are shrouded in obscurity. *See Fazzino v. Guido*, 836 S.W.2d 271, 274 (Tex. App.–Houston [1st Dist.] 1992, writ denied). An owner's donative intent may not be implied from evidence that shows only that the public used the land for a long time without objection from the landowner*. Id.* Even assuming that the origins of the road were shrouded in obscurity, there was no evidence introduced to show that the "public" ever used the road in question. Use of a roadway by landowners, family, friends, guests, and business invitees is not evidence establishing public use. *See Long Island Owner's Ass'n Inc. v. Davidson*, 965 S.W.2d 674, 682 (Tex. App.–Corpus Christi 1998, pet. denied); *McMullen v. King*, 584 S.W.2d 706, 709 (Tex. App.–Corpus Christi 1979, writ ref'd n.r.e.).

This road was a dead end road that ended on what now is Womack's property. Because the Ross family has not introduced evidence showing the public nature of the road as required for their implied public dedication claim; the trial court correctly granted summary judgment on that ground. All of the named individuals using the road were landowners, family, friends, guests, and business invitees. McCan testified that it was a private road. According to McCan and even the Ross family, when uninvited people came on the road they would be stopped and escorted off the road. The summary judgment evidence established that the road was not public. The Ross family's second, third and fourth issues are overruled.

4. Attorney's Fees

By the Ross family's final point, they challenge the award of attorney's fees. We have concluded that the trial court erred in granting summary judgment in Womack's favor. We conclude that the trial court's award of attorney's fees was likewise in error. We sustain the Ross family's tenth issue.

14

## V. Conclusion

The judgment of the trial court is reversed and remanded for proceedings consistent with this opinion.

ROSE VELA
Justice

Memorandum Opinion delivered and
filed this 6th day of November, 2008.