

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-09-00383-CV

PATSY WHITEHEAD                                            APPELLANT

V.

GAVIN MACKENZIE AND                               APPELLEES
PATRICIA MACKENZIE

------------

## FROM THE 342ND DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I. INTRODUCTION

This appeal arises from a dispute between appellant Patsy Whitehead and appellees Gavin and Patricia Mackenzie over the Mackenzies' authority to use a strip of land on Whitehead's property to access their own adjacent property. In two issues, Whitehead contends that the trial court erred by denying her motion for summary judgment and by granting the Mackenzies' motion for summary

---

[1]*See* Tex. R. App. P. 47.4.

judgment, finding that an easement for ingress and egress exists on Whitehead's property to access the Mackenzies' property. We will affirm.

## II. BACKGROUND

The Mackenzies are the owners of an approximate thirty-acre tract of land located within Mansfield, Tarrant County, Texas. Since the purchase of their property in 1998, the Mackenzies have accessed their property via an existing paved roadway which travels west across the southern portion of Whitehead's property and terminates at the eastern edge of the Mackenzies' property. No one has particular recollection as to exactly when the roadway came into existence, but it is known that the roadway has existed in excess of fifty years. By one neighbor's account, the roadway was gravel until the 1960s but was later paved. After it was paved, neighbors aver that the City of Mansfield maintained the roadway, even repairing potholes.

Aside from being utilized by the Mackenzies, it was also the main path of ingress and egress by the Mackenzies' predecessors in title. Additionally, public servants of various kinds have used the roadway over the years, beginning in at least the 1950s, when Tarrant County used the road to obtain gravel from a pit previously located on what is now the Mackenzies' property, and continuing until approximately 2000, when the City of Mansfield employees ceased using the road for maintenance purposes. According to neighbors and a previous owner, the Mackenzies' property was a dairy farm in the 1950s and milk trucks regularly

2

accessed the Mackenzies' property, using the disputed roadway for ingress and egress to the farm and a neighboring dairy farm.

The Mackenzies maintain that this roadway has been the exclusive means of ingress and egress to their property since the purchase of their property in 1998. In June 2006, Whitehead began constructing a fence along the southern portion of her property line. Believing that this was an attempt by Whitehead to prevent further use of the roadway, the Mackenzies filed this suit.

In their complaint, the Mackenzies sought injunctive relief to prevent Whitehead from continuing construction of the fence, and they also sought declaratory relief. The trial court granted a temporary restraining order, preventing further construction. Whitehead filed a countersuit. In her countersuit, Whitehead made claims for trespass to try title and abuse of process. The Mackenzies filed their motion for summary judgment, contending that no genuine issues of material fact exist that the Mackenzies, by prescriptive easement, enjoy the right to use the roadway. Alternatively, the Mackenzies argued that they have the right to use the roadway because it is a public roadway by way of an implied dedication.

Whitehead countered with her own no-evidence and traditional motions for summary judgment. Whitehead contended that the Mackenzies failed to provide any evidence that they have a right to use the roadway through either prescriptive easement or dedication to the public and that the Mackenzies had

3

abused process as a matter of law. The trial court denied Whitehead's motion and granted the Mackenzies' motion. This appeal followed.

## III. DISCUSSION

In two issues, Whitehead contends that the trial court erred by denying her motion for summary judgment and by granting the Mackenzies' motion for summary judgment.

### A. Standard of Review

In a summary judgment case, the issue on appeal is whether the movant met the summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We review a summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010).

We take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). We consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could and disregarding evidence contrary to the nonmovant unless reasonable jurors could not. *Mann Frankfort*, 289 S.W.3d at 848. We must consider whether reasonable and fair-minded jurors could differ in their conclusions in light of all of the evidence

4

presented. *See Wal-Mart Stores, Inc. v. Spates*, 186 S.W.3d 566, 568 (Tex. 2006); *City of Keller v. Wilson*, 168 S.W.3d 802, 822–24 (Tex. 2005).

When a trial court's order granting summary judgment does not specify the ground or grounds relied on for its ruling, summary judgment will be affirmed on appeal if any of the theories presented to the trial court and preserved for appellate review are meritorious. *Knott*, 128 S.W.3d at 216; *Star-Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex. 1995).

When both parties move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review both parties' summary judgment evidence and determine all questions presented. *Mann Frankfort*, 289 S.W.3d at 848; *see Myrad Props., Inc. v. LaSalle Bank Nat'l Ass'n*, 300 S.W.3d 746, 753 (Tex. 2009). The reviewing court should render the judgment that the trial court should have rendered. *Mann Frankfort*, 289 S.W.3d at 848.

### B.    Implied Dedication

In her first issue and in parts of her second issue, Whitehead argues that genuine issues of material fact exist with regard to whether the roadway in question is an easement by implied dedication. Common law dedication can either be express or implied. *Gutierrez v. Cnty. of Zapata*, 951 S.W.2d 831, 837 (Tex. App.—San Antonio 1997, no writ). Both parties agree that this case does not involve an express dedication; thus, the question presented is whether the summary judgment evidence conclusively established an implied dedication of

5

the roadway to the public. Specifically, Whitehead argues that there are fact questions regarding donative intent and no evidence of public usage of the roadway.

Whether a road has been dedicated to public use is generally a question of fact. *Broussard v. Jablecki*, 792 S.W.2d 535, 537 (Tex. App.—Houston [1st Dist.] 1990, no writ). Implied dedication requires both a clear and unequivocal intention on the part of the landowner to appropriate the land to public use and an acceptance by the public. *Gutierrez*, 951 S.W.2d at 838. Because an implied dedication results in "the appropriation of private property for public use without any compensation to the landowner," the Mackenzies bear a heavy burden to establish an implied dedication. *Cnty. of Real v. Hafley*, 873 S.W.2d 725, 728 (Tex. App.—San Antonio 1994, writ denied).

The elements of an implied dedication are: (1) the landowner induced the belief that the landowner intended to dedicate the road to public use; (2) the landowner was competent to do so; (3) the public relied on the landowner's actions and will be served by the dedication; and (4) there was an offer and acceptance. *Las Vegas Pecan & Cattle Co. v. Zavala Cnty.*, 682 S.W.2d 254, 256 (Tex. 1984); *Stein v. Killough*, 53 S.W.3d 36, 42 n.2 (Tex. App.—San Antonio 2001, no pet.). Generally, an owner's donative intent may not be implied from evidence showing only that the public used the land without objection from the landowner. *Fazzino v. Guido*, 836 S.W.2d 271, 274 (Tex. App.—Houston [1st Dist.] 1992, writ denied). But "evidence of long and continued use by the

6

public raises a presumption of dedication by the owner when the origin of the public use and the ownership of the land at the time it originated cannot be shown, one way or the other, due to the lapse of time." *Id.*; *see also O'Connor v. Gragg*, 161 Tex. 273, 279, 339 S.W.2d 878, 882 (1960).

### 1. Presumption of Dedication

For the presumption of dedication to apply, the origin of the public use and the ownership at that time must be "shrouded in obscurity, and no proof can be adduced showing the intention of the owner in allowing the use." *Fazzino*, 836 S.W.2d at 274 (quoting *Dunn v. Deussen*, 268 S.W.2d 266, 269 (Tex. Civ. App.—Fort Worth 1954, writ ref'd n.r.e.)); *O'Connor*, 339 S.W.2d at 882. The *O'Connor* Court explained that we analyze whether the open and known acts "are of such a character as to induce the belief that the owner intended to dedicate the way to public use, and the public and individuals act upon such conduct, proceed as if there had been in fact a dedication, and acquire rights which would be lost if the owner were allowed to reclaim the land, [if so,] then the law will not permit him to assert that there was no intent to dedicate." *O'Connor*, 339 S.W.2d at 882–83 (internal quotations omitted).

Thus, we must determine whether the Mackenzies conclusively proved that the origin of the roadway in question was "shrouded in obscurity" and that from that time, it was subject to long and continuous use by the public.

Surrounding neighbors testified that the roadway was used by the public as far back as they could remember, that it was originally paved in the 1960s,

7

and that it was later maintained by the City of Mansfield. Multiple witnesses testified that for as long as they could remember, the roadway was the only means of access to the Mackenzies' property. Yet no witness could precisely recall the exact point in time when the roadway came into existence or the owner of the property at such time. But long and continued use by the public is evident. Witness testimony states that milk trucks regularly used the roadway to collect milk from dairy farms operated on adjacent property and on the Mackenzies' property by the Mackenzies' predecessors in title beginning at least in the mid-1950s. Tarrant County roadway maintenance vehicles utilized the roadway to collect gravel from a gravel pit located on the Mackenzies' property and also put the same gravel on the roadway during the same period of time. In short, a number of witnesses indicate that this roadway has been in existence for a long time. Additionally, a four-foot fence separates the roadway from the remainder of Whitehead's property. The totality of this evidence merits application of the presumption of donative intent. *See Hatton v. Grigar*, 66 S.W.3d 545, 555–57 (Tex. App.—Houston [14th Dist.] 2002, no pet.) (holding similar evidence legally sufficient to support implied dedication).

While a presumption does not result in shifting the burden of proof, it does shift the burden of producing or going forward with the evidence to the party against whom it operates. *Gen. Motors Corp. v. Saenz*, 873 S.W.2d 353, 359 (Tex. 1993). In the context of a summary judgment, this principle required Whitehead, as the nonmovant, to produce evidence creating a genuine issue of

8

material fact to challenge this element. *Bush v. Fayette Cnty.*, No. 03-05-00274-CV, 2006 WL 952413, at *3 (Tex. App.—Austin, Apr. 13, 2006, no. pet.). But Whitehead failed to produce any evidence regarding the element of intent or the applicability of the presumption of intention to dedicate the area to the public. Therefore, because the Mackenzies established through their proof that the presumption applies and Whitehead did not offer evidence to the contrary, we hold that the Mackenzies satisfied this element of implied dedication.

### 2. Public Use

Next, Whitehead complains that there is no evidence that the public relied on the dedication or that the dedication served a public purpose. Specifically, Whitehead contends that only the Mackenzies and the Whiteheads now use the roadway. But, as discussed above, there was ample testimony from witnesses who had either used the road or seen the road used by the public since the 1950s. Evidence of long, continued, unquestioned use of a road supports a finding that the public relied on an implied dedication of that road. *Supak v. Zboril*, 56 S.W.3d 785, 791 (Tex. App.—Houston [14th Dist.] 2001, no pet.) (holding that public use element of implied dedication was met when evidence demonstrated public had used roadway for more than fifty years and roadway had been separated from adjoining property by fences); *Graff v. Whittle*, 947 S.W.2d 629, 638–39 (Tex. App.—Texarkana 1997, writ denied) (holding public use element met when multiple witnesses testified to long, continued use of roadway). Furthermore, Whitehead's complaint that the public allegedly no

9

longer uses the roadway is not evidence that it is not a public road. *Baker v. Peace*, 172 S.W.3d 82, 90 (Tex. App.—El Paso 2005, pet. denied) ("A public road does not depend upon its length or upon the places to which it leads, nor upon the number of persons who actually travel upon it. In fact, proof that a road is only slightly traveled by the public is not proof that a road is not a public road.") (citations omitted). We conclude that the Mackenzies established public use of the roadway.

We therefore hold that the trial court did not err by granting the Mackenzies' summary judgment motion predicated on the theory that the roadway had been impliedly dedicated to the public. *See Owens v. Hockett*, 151 Tex. 503, 506–07, 251 S.W.2d 957, 959 (Tex. 1952) (implied dedication where evidence showed roadway was segregated from land by fencing, landowner and others knew of county maintenance, and public used the road prior to the landowner obstructing the road). We overrule Whitehead's first issue and these portions of her second issue. Furthermore, because we hold that the trial court properly granted the Mackenzies' motion for summary judgment, we overrule the portion of Whitehead's second issue predicated on her trespass to try title claim.

### C.    Abuse of Process

In the remainder of her second issue, Whitehead argues that the trial court erred by not granting her motion for summary judgment because, according to Whitehead, the Mackenzies as a matter of law had abused process.

10

Abuse of process is the malicious use or misapplication of process in order to accomplish an ulterior purpose. *Hunt v. Baldwin*, 68 S.W.3d 117, 129 (Tex. App.—Houston [14th Dist.] 2001, no pet.); *Detenbeck v. Koester*, 886 S.W.2d 477, 480 (Tex. App.—Houston [1st Dist.] 1994, no writ). To prove a claim for abuse of process, Whitehead needed to show that (1) the Mackenzies made an illegal, improper or perverted use of the process, a use neither warranted nor authorized by the process; (2) the Mackenzies had an ulterior motive or purpose in exercising such illegal, perverted, or improper use of the process; and (3) damage occurred as a result of such illegal act. *See Hunt*, 68 S.W.3d at 129. Texas law recognizes a cause of action for abuse of process where the original process has been used to accomplish an end other than that which it was designed to accomplish. *Id.* at 130. In other words, the original issuance of the legal process was justified, but the process itself was subsequently used for a purpose for which it was not intended. *See id.* When the process is used for the purpose for which it is intended, even though accompanied by an ulterior motive, no abuse of process occurs. *Baubles & Beads v. Louis Vuitton, S.A.*, 766 S.W.2d 377, 378–79 (Tex. App.—Texarkana 1989, no writ).

Here, the Mackenzies used the process for the purpose for which it was intended; namely, the trial court initially granting injunctive relief and ultimately granting judgment in favor of the Mackenzies that they had the right to use the roadway. Thus, the trial court did not err by denying Whitehead's summary

11

judgment motion based on her abuse of process claim. We overrule the remainder of Whitehead's second issue.

## IV. CONCLUSION

Having overruled both of Whitehead's issues, we affirm the trial court's order.

BILL MEIER
JUSTICE

PANEL: DAUPHINOT, MEIER, and GABRIEL, JJ.

DELIVERED: July 14, 2011