James D. MALONE, et ux., Appellants,

v.

Grover H. WHITFIELD, et ux., Appellees.

No. 6264.

Court of Civil Appeals of Texas, Waco.

July 23, 1981.
Rehearing Denied Aug. 20, 1981.

Robert A. Sparks, Cleburne, for appellants.

Andy J. McMullen, McMullen, Connally, Robertson & Campbell, Inc., Hamilton, for appellees.

HALL, Justice.

The parties to this suit are plaintiffs Mr. and Mrs. Grover Whitfield, and defendants Dr. and Mrs. James D. Malone. Plaintiffs alleged that defendants have placed a locked gate across a public road in Bosque County which leads to plaintiffs' land; and they pleaded for a permanent injunction enjoining defendants from obstructing the road and from interfering with the use and maintenance of the road by plaintiffs and the public. Plaintiffs alleged that the road had been acquired by the public by prescription and by implied dedication.

Defendants answered with a general denial.

The case was tried to a jury in May, 1980. The jury made these findings:

1. The tract in question was used in the past as a public roadway by Bosque County and the citizens thereof openly, notoriously, hostilely, adversely, uninterruptedly and continuously for a period of more than ten years.

2. Such ten-year use occurred with the knowledge and acquiescence of the then title owners of the tract.

3. At the time of such ten-year use the owners intended to dedicate the tract as a public way, and such use by the public constituted an acceptance of the dedication by the public.

4, 5 and 6. The inquiries in these special issues were worded identically to those in special issues 1, 2 and 3, except that the term of public use inquired about was "a period of more than twenty-five years in the past" rather than "ten years." These special issues were also answered in plaintiffs' favor.

There were no objections to the court's charge.

Judgment was rendered on the verdict permanently enjoining defendants and their privies from interfering with the public's use and maintenance of the property as a public road, and from interfering with plaintiffs' use of the road.

Defendants brought this appeal. They seek reversal of the judgment on twelve assignments of error in which they assert that the jury's answers to the six special issues are not supported by any evidence, and alternatively that the findings are not supported by factually sufficient evidence. We overrule these contentions.

█ Proper resolution of a complaint that a finding is not supported by any evidence permits consideration of only the evidence and its inferences that favor the finding; a correct decision on a complaint that the evidence is factually insufficient to support the finding requires that we consider and weigh all of the evidence. *Burnett v. Motyka*, 610 S.W.2d 735, 736 (Tex.1980); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951).

The tract in question runs generally north and south. It is approximately 2,000 feet long, twenty-two feet wide at its south end, twenty-nine feet wide at its north end, and forty feet wide at its widest point. It contains 1.76 acres. It is located along the eastern boundary of 217 acres owned by defendants, and separates defendants' property from 415 acres owned by Mrs. Roy Richardson and her two daughters. Plaintiffs own 100 acres which adjoin the north end of the disputed tract. In 1965 defendants placed gates across both the north and south ends of the tract. They have locked the gate at the south end. From the gate at the north end a road or lane travels in a northwesterly direction across land owned by the Flannery family and others not parties to this suit to Farm to Market Road 216. The City of Iredell is located on Farm to Market Road 216 a few miles south of this juncture. A county road from the south runs straight to the south gate on the disputed tract. This county road travels in a southerly direction from the south gate to Farm to Market Road 927. The City of Iredell is located on Farm to Market Road 927 a short distance southwest of this juncture.

All of the area discussed above is located in Bosque County. None of the parties live in Bosque County. Plaintiffs live in the City of Hico; defendants live in the City of Fort Worth.

At one time, at least as far back as 1930, Mr. and Mrs. Ed Greer owned the property now owned by defendants and the Richardsons which together total 632 acres. This property included the disputed tract and the land on both the east and west sides of the tract. In 1945 the Greers sold the 632 acres to Mr. and Mrs. Roy Richardson. Mr. Richardson died intestate in 1962 or 1963. In July, 1964, Mr. Richardson's widow and two surviving daughters sold the western 217 acres to defendants, and they retained the eastern 415 acres. There is evidence that at the time of this purchase there was a fence along the entire east side of the disputed tract, and there were remnants of a fence along the west side. The fence along the east side formed the west boundary of the land retained by the Richardsons. Sometime between September, 1964, and January, 1966, defendant Dr. Malone employed a fencing crew to fence the entire perimeter of defendants' property "according to the deed line" as he understood it from his deed. This crew was composed of John L. Chapman, Fred Flannery, and two others. All were defendants' neighbors. Mr. Flannery owned 250 acres which adjoined defendants' and the Richardsons' north boundaries. Mr. Chapman was the father of Mrs. Roy Richardson. At one time, when the Richardsons owned all of the property, Mr. Chapman lived on the property now owned by defendants and operated a dairy there. Because Mr. Chapman was thoroughly familiar with the property, he was placed in charge of the fencing job by defendant Dr. Malone "to do as he saw fit." As a part of this fencing, based upon his "historical knowledge of the property," Mr. Chapman placed a fence along the west side of the disputed tract. Thus, the tract was then fenced on both sides. Defendants also had the fencing crew place the gates across the north and south ends of the tract. Mr. Chapman is deceased. The record does not show his age at the time of the fencing, but it shows that he was "elderly," and it shows that his son, Tommy Chapman, who is younger than Mrs. Richardson, began running cattle on the property in 1945 when the Richardsons bought it.

Plaintiffs purchased their 100 acres which adjoin the north end of the disputed tract in January, 1979. This property was once a part of the 250 acres owned by Mr. Fred Flannery (a member of defendants' fencing crew) when defendants' property was fenced in 1965. Mr. Flannery is now dead. Defendant Dr. Malone admitted that he sought and secured Mr. Flannery's permission to construct the gates at the north and south ends of the disputed tract; and his testimony inferentially shows that Mr. Flannery acquiesced with the understanding that Mr. Flannery and his assigns would always have use of the tract as a roadway to the south. Defendants have refused to let plaintiffs use the tract. Plaintiffs now reach their property by using the north road from Farm to Market Road 216. The south route from Farm to Market Road 927, across the disputed tract, would be less circuitous and more convenient to plaintiffs.

The testimony of the witnesses regarding the use of the disputed tract as a roadway by the public went as far back as 1930. There was testimony that from 1930 until 1956 the tract in question was open to the public and used by the public freely and without interruption as part of a "back way" road between the Farm to Market Roads; that it "was open, never heavily traveled, but open" to the public and "constituted a part of the road system that connected 927 and 216"; that from 1930 until 1945, the road was used as an alternate school bus route; that the landowners did not protest or object to the pubic's use of the roadway; and that "it was just taken for granted" by everyone in the community that it was a public road. Other testimony shows that at least from 1954 until 1965 when defendants placed the gate across the south end the disputed tract was maintained by Bosque County as a public road at the County's expense, using county employees and equipment, by blading and filling holes with rock; that as recently as 1964, the County maintained all of the roadway between the Farm to Market Roads; that the County did not ask or need permission

to maintain the road because it was a "public road . . . open to the public"; and that the general reputation of the roadway in the community was that it was a public road. This testimony came from witnesses who were raised and resided in the area and had used the road from 1930 forward; and from county employees, including a former County Commissioner for the area, who had maintained the road for the County. Additionally, Linda Richardson Moore, (a daughter of the Roy Richardsons who now resides on the Richardson property) who was born in 1948 and has been familiar with the property all of her life, admitted that "people would drive up through this land . . . once or twice a week . . . it would vary," until defendants closed it. The "people" to whom she referred included not only those who lived nearby, but also workers in the area who used the roadway to travel between the Farm to Market Roads. There is no evidence that any owner of the roadway at any time interfered with the public's use and maintenance of the road, except one instance when Mr. Chapman, Roy Richardson's father-in-law, ordered some "road hunters" to leave. The evidence also shows that at all pertinent times Mr. and Mrs. Ed. Greer and Mr. and Mrs. Roy Richardson were adults and were mentally competent.

The disputed tract was surveyed in March, 1980. The surveyor found "an old roadway bed that can be made out in most areas." He also found in one area a twenty-four inch steel pipe, eighteen feet long, that "ends under the roadway . . . where the road had been built up over the steel pipe."

█ Whether a public right-of-way has been acquired by dedication or prescription is generally a question of fact. 28 Tex. Jur.2d 43, Highways And Streets, § 43.

"Respecting what will amount to or may be received as evidence of a dedication, the law is too well settled to admit of controversy. A setting apart, or dedication to a public use, to be effectual, need not be by deed; nor need it be evidenced by the use of it having been continued for any particular time; it is enough that there has been

some clear, unequivocal act or declaration of the proprietor, evidencing an intention to set it apart for a public use, and that others have acted in reference to and upon the faith of such manifestation of intention. If the act of dedication be unequivocal, it may take place immediately. If there be no such act, it may be evidenced by an uninterrupted use, and that need not be for any particular time." *Ramthun v. Halfman*, 58 Tex. 551, 553 (1883); *Oswald v. Grenet*, 22 Tex. 94, 99 (1858).

█ There is evidence in our case that the disputed property was used by the public as a road from 1930 until 1965, when it was obstructed by defendants, without interruption under a claim of right and not by mere permission. The road had the reputation in the community of being a public road. It was open to and freely used by the public. From 1954 until 1965, when the Robinsons owned the property, it was maintained by the County as a part of the County's system of public roads without interruption. During this period Mrs. Robinson's father resided on the Robinson property west of the road. The evidence bears the inference that the roadway was delineated by fences, or at least by fence posts, on each side during this time.

█ We hold the evidence is legally sufficient to support the jury's findings of dedication and public acceptance. The evidence showing infrequent use of the roadway by the public does not defeat these findings. Proof that a road is only slightly traveled by the public does not prove the road is not public. *Rowan v. Pickett*, 237 S.W.2d 734, 739 (Tex.Civ.App.—San Antonio 1951, no writ). If it is free and open to all who have occasion to use it, it is a public road. *McCloskey v. Heinen*, 266 S.W. 193, 195 (Tex.Civ.App.—El Paso 1924, writ dismd); *City of Dublin v. Barrett*, 242 S.W. 535, (Tex.Civ.App.—San Antonio 1922, writ dismd).

Of course, there is other evidence not detailed by us which bears upon all of the jury's findings. We have given defendants' analysis of the evidence and their argu-

ments based thereon careful study. Our consideration of all of the evidence convinces us that the jury's findings on dedication and public acceptance are supported by factually sufficient evidence. Defendants' contrary contentions are overruled.

■ However, we agree with defendants that there is no evidence in the record which even tends to show that the owners of the property had no right to the full use and enjoyment of the road along with the public. For this reason we sustain defendants' contention that the evidence is legally insufficient to support the findings of adverse and hostile use by the public which were necessary to establish that the public acquired the roadway by prescription. See *O'Connor v. Gragg*, 161 Tex. 273, 339 S.W.2d 878, 881 (1960); *Rust v. Engledow*, 368 S.W.2d 635, 638 (Tex.Civ.App.—Waco 1963, writ ref'd n. r. e.).

The judgment is affirmed.