Pete **REED** and Wife, Carla **Reed,** Appellants,

v.

Paulette **WRIGHT,** Appellee.

No. 06–03–00127–CV.

Court of Appeals of Texas, Texarkana.

Submitted Dec. 8, 2004.

Decided Jan. 20, 2005.

---

M. Wade Kimmel, Winford L. Dunn Jr., Dunn, Nutter & Morgan LLP, Texarkana, for Appellants.

Troy A. Hornsby, Miller, James, Miller and Hornsby, LLP, Texarkana, for Appellee.

Before MORRISS, C.J., ROSS and CORNELIUS,* JJ.

OPINION

Opinion by Chief Justice MORRISS.

Two roads diverged in the east Texas piney woods. In 1985, one of them, Goff Road, had been declared public. The other, Cherry Lane,[1] the subject of this

---

* William J. Cornelius, Retired, Chief Justice, Sitting by Assignment

1. Cherry Lane is a one-lane dirt road on Bowie County property owned by appellee, Pau-

appeal and formerly the only way the public could access Goff Road, has now been declared private by the trial court after a nonjury trial between appellants, Pete and Clara Reed, and appellee, Paulette Wright. The uncontradicted evidence shows that, though Cherry Lane has not been heavily traveled,[2] the public used it for many years—at least twenty-five years before either party entered the picture. And that makes all the difference. Because we hold the evidence conclusively proves Cherry Lane was impliedly dedicated, we reverse the trial court's judgment and render judgment that Cherry Lane is a public road.

In 1983, Wright purchased a fifteen-acre tract of land from Richard and Mary Couch. Cherry Lane runs across that tract, along its north edge.[3] According to the Reeds and other neighbors, Cherry Lane had been used by the public since the early 1950s or before, and Bowie County had maintained and repaired it.

Later in 1983, Charles R. Goff, an owner of land to Wright's south, sued Wright concerning a gate she had erected and locked, blocking public access to the road known as Goff Road, which ran south from the west end of Cherry Lane, across the western edge of Wright's property. Following a 1985 jury trial, that trial court declared Goff Road public. While the judgment in that suit did not address whether Cherry Lane was a public road, the only way the public could access Goff Road was by using Cherry Lane.[4]

In 1999, the Reeds purchased Lots One and Two in Block One of Meadow Brook Heights Addition—lots which are located on the north side of Cherry Lane at its west end—and built a house there. Although the Reeds could have used exclusively other roads to access their property, they also used Cherry Lane for that purpose. When Wright decided to block access to Cherry Lane, this lawsuit resulted. After a bench trial, the trial court declared Cherry Lane private.

We reverse the trial court's judgment and render judgment that Cherry Lane is a public road. We reach that result because we hold (1) implied dedication was properly at issue at trial, and (2) implied dedication of Cherry Lane was conclusively proven, due to lack of any evidence to rebut the presumption of dedication, which presumption arose since conclusively (A) the origin of Cherry Lane is shrouded in

lette Wright. Wright refers to the road as "my lane" and testified that appellants, Pete and Clara Reed, installed a sign labeling the street "Cherry Lane." For the sake of convenience, we will call the road "Cherry Lane."

2. "Proof that a road is only slightly traveled by the public does not prove the road is not public." *Malone v. Whitfield*, 621 S.W.2d 192, 195 (Tex.App.-Waco 1981, writ ref'd n.r.e.). "If it is free and open to all who have occasion to use it, it is a public road." *Id.*

3. Wright's original deed from the Couches specified the property was "subject to a 30 ft. road easement, said easement being 30' South of and parallel to the North line, and 30' East of and parallel to the West line of said tract." The "easement" along the north line coincides with Cherry Lane, while the "easement" along the west line coincides with

Goff Road. On June 4, 1985, the Couches executed a correction deed removing the reference to the northerly easement.

4. The Reeds contend Wright should have contested the public status of Cherry Lane at the time Goff Road was litigated. Because of our disposition of this appeal, we do not reach that issue.

Currently all neighbors have access to their property by means other than Cherry Lane, with one exception. The one neighbor with access only by way of Cherry Lane is Steve Connor—not a party to this action—who owns Lot 31, Block Five, Meadow Brook Heights Addition, an unimproved lot on the north side of Cherry Lane, just east of its midpoint.

obscurity, and (B) before 1983, the public had made long and continuous use of Cherry Lane.

### 1. Implied Dedication Was Properly at Issue

Before we discuss the substance of implied dedication, we address a procedural matter. On appeal, Wright contends the Reeds' pleadings fail to allege implied dedication. The pleadings alleged that Cherry Lane had been dedicated to public use, but did not specifically plead implied dedication. The record does not indicate that any special exceptions were made concerning this issue.

■■■ Pleadings are sufficient if they provide the opponent with fair and adequate notice. *Roark v. Allen,* 633 S.W.2d 804, 810 (Tex.1982); *Burke v. Union Pac. Res. Co.,* 138 S.W.3d 46, 66 (Tex.App.-Texarkana 2004, pet. filed). Pleadings provide fair and adequate notice if they contain information sufficient to allow an opposing party to adequately prepare for trial. *Roark,* 633 S.W.2d at 810. Further, pleadings are to be liberally construed. *Id.* The Reeds' pleadings contending the road had been dedicated were sufficient to raise the issue of *implied* dedication.

■■■ Even if the pleadings had been insufficient to raise implied dedication, the issue was tried by consent. "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." TEX.R. CIV. P. 67. Trial by consent applies in the exceptional case where it clearly appears from the record as a whole that the parties tried an unpled issue. *Mastin v. Mastin,* 70 S.W.3d 148, 154 (Tex.App.-San Antonio 2001, no pet.); *Stephanz v. Laird,* 846 S.W.2d 895, 901 (Tex.App.-Houston [1st Dist.] 1993, writ denied). To determine whether an issue was tried by

consent, appellate courts "must examine the record not for evidence of the issue, but rather for evidence of trial of the issue." *Mastin,* 70 S.W.3d at 154; *Libhart v. Copeland,* 949 S.W.2d 783, 797 (Tex. App.-Waco 1997, no writ). Each side submitted a trial brief addressing implied dedication. The trial court addressed implied dedication in its findings of fact. At a minimum, the parties tried the issue of implied dedication by consent. Implied dedication was properly at issue. We now turn to the substance of the implied dedication issue.

### 2. Implied Dedication Was Conclusively Proven

The Reeds assert the evidence conclusively proved implied dedication. We agree, because we hold there was no evidence to rebut the presumption of dedication which arose from the conclusive proof that (A) the origin of Cherry Lane was shrouded in obscurity, and (B) before 1983 the public made long and continuous use of Cherry Lane.

■■■ The Reeds appeal from a bench trial. Findings of fact entered in a case tried to the court are of the same force and dignity as a jury's answers to jury questions. *Anderson v. City of Seven Points,* 806 S.W.2d 791, 794 (Tex.1991). The trial court's findings of fact are reviewable for evidentiary sufficiency by the same standards that are applied in reviewing evidentiary sufficiency to support a jury verdict. *Ortiz v. Jones,* 917 S.W.2d 770, 772 (Tex.1996); *Catalina v. Blasdel,* 881 S.W.2d 295, 297 (Tex.1994).

■■■ When deciding a legal sufficiency point concerning a fact issue, we must consider all the evidence in the record in the light most favorable to the party in whose favor the verdict has been rendered, and we must apply every reason-

able inference that could be made from the evidence in that party's favor. *Merrell Dow Pharms., Inc. v. Havner,* 953 S.W.2d 706, 711 (Tex.1997); *Pilgrim's Pride Corp. v. Smoak,* 134 S.W.3d 880, 888–89 (Tex. App.-Texarkana 2004, pet. denied). We disregard all evidence and inferences to the contrary. *Burroughs Wellcome Co. v. Crye,* 907 S.W.2d 497, 499 (Tex.1995); *Best v. Ryan Auto Group, Inc.,* 786 S.W.2d 670, 671 (Tex.1990). A no-evidence point will be sustained when (a) there is a complete absence of evidence of a vital fact; (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (c) the evidence offered to prove a vital fact is no more than a mere scintilla; or (d) the evidence conclusively establishes the opposite of the vital fact. *Uniroyal Goodrich Tire Co. v. Martinez,* 977 S.W.2d 328, 334 (Tex.1998). More than a scintilla of evidence exists if the evidence furnishes some reasonable basis for differing conclusions by reasonable minds about the existence of a vital fact. *Rocor Int'l, Inc. v. Nat'l Union Fire Ins. Co.,* 77 S.W.3d 253, 262 (Tex.2002).

The trial court addressed only dedicatory intent [5] in finding Cherry Lane had not been dedicated. But since the trial court addressed that element, any omitted findings will be deemed to support the judgment if evidence exists to support such findings. *See* TEX.R. CIV. P. 299; *Lindner v. Hill,* 691 S.W.2d 590, 592 (Tex.1985); *Norris v. Norris,* 56 S.W.3d 333, 345 (Tex. App.-El Paso 2001, no pet.).

 Dedication [6] is presumed [7] when the public engages in long and con-

5. The trial court found "[t]here was no intention to dedicate the land to public use. The road at issue is a very rough dirt path requiring four-wheel drive to access it. It is a single lane, not large enough for two cars to pass one another." While evidence certainly exists tending to show Wright did not intend to dedicate Cherry Lane, our analysis leads us to the conclusion that Cherry Lane was impliedly dedicated before Wright purchased the land in 1983. In our view, the intention at the heart of this case was not Wright's, but the intention of one or more of Wright's predecessors in title.

6. Under the common law, a property owner can either expressly or impliedly dedicate property to a public use. *Pinebrook Props., Ltd. v. Brookhaven Lake Prop. Owners Ass'n,* 77 S.W.3d 487, 503 (Tex.App.-Texarkana 2002, pet. denied). When it is alleged that a particular landowner impliedly dedicated property to a public use, four elements must ordinarily be proven:

(1) the acts of the landowner induced the belief that the landowner intended to dedicate the road to public use; (2) [the landowner] was competent to do so; (3) the public relied on these acts and will be served by the dedication; and (4) there was an offer and acceptance of the dedication.

*Lindner,* 691 S.W.2d at 592 (quoting *Las Vegas Pecan & Cattle Co. v. Zavala County,* 682 S.W.2d 254, 256 (Tex.1984)); *Machala v. Weems,* 56 S.W.3d 748, 760 (Tex.App.-Texarkana 2001, no pet.); *Stein v. Killough,* 53 S.W.3d 36, 43 (Tex.App.-San Antonio 2001, no pet.).

7. We recognize the existence of opinion language from the Texas Supreme Court that the presumption falls short of a full presumption of dedication. Specifically, that court stated that "a presumption of *acquiescence* is raised when the origin of the user [sic] by the public and the ownership of the land at that time are shrouded in obscurity, and no evidence exists to show the intention of the owner in allowing the use." *O'Connor v. Gragg,* 161 Tex. 273, 339 S.W.2d 878, 882 (1960) (emphasis added). Later in the same opinion, the court stated "the law raises a presumption that the requisite intention *and acts disclosing it* were present." *Id.* at 883 (emphasis added). However, the court in *O'Connor* did not expressly consider the other elements of dedication in affirming the finding of implied dedication. This Court and the First District Court of Appeals have interpreted *O'Connor* to hold that, if the origin of the road is shrouded in obscurity, long and continuous public use establishes a presumption of *dedication,* not just the *intent* to dedicate. *Graff v. Whittle,* 947 S.W.2d 629, 637 (Tex.App.-Texar-

tinuous use of a road whose origin is "shrouded in obscurity." *Graff*, 947 S.W.2d at 637; *Fazzino*, 836 S.W.2d at 274; *see O'Connor*, 339 S.W.2d at 882; *Supak*, 56 S.W.3d at 790.

Because the evidence conclusively establishes (A) the origin of Cherry Lane is shrouded in obscurity, and (B) before 1983 the public made long and continuous use of Cherry Lane, a presumption arose that all elements of proof, essential to establish implied dedication, in fact existed. We find no evidence that tended to rebut that presumption.

### A. Cherry Lane's Origin Is Shrouded in Obscurity

The origin of Cherry Lane is "shrouded in obscurity," since the record provides no evidence of the identity and no direct evidence of the intent of the owner who originally established the road. Wright contends the presumption of dedication does not apply because William Crain testified

kana 1997, writ denied); *Fazzino v. Guido*, 836 S.W.2d 271, 274 (Tex.App.-Houston [1st Dist.] 1992, writ denied). The Fourteenth District Court of Appeals held in *Supak* that, when the origin of the road is shrouded in obscurity, a presumption of donative intent arises; and that court considered at least one of the other factors of implied dedication. *Supak v. Zboril*, 56 S.W.3d 785, 790 (Tex. App.-Houston [14th Dist.] 2001, no pet.). We maintain our position as stated in *Graff* that, if the origin of the road is shrouded in obscurity and there is no contrary showing of the owner's intention, long and continuous public use raises a presumption of dedication.

Even if the presumption supplies only the landowner's *intent* to dedicate the road to public use, we believe the remaining elements have been proven as a matter of law. The obscurity shrouding the origin of Cherry Lane also shrouds the identity and intent of the owner or owners who originally established the roadway. Logically, the obscurity also shrouds any assessment of any previous owner's competency. "There is a rebuttable presumption that a person is mentally competent unless a judicial finding to the contrary is

he built the road 1965 when he was leasing the field currently owned by Wright. Although Crain did state that he "built" the road, he also testified the "old road" had been there when he "built" it in 1965 and that his business had used the road since 1963, two years before he "built" the road. Crain's father-in-law bought the adjoining Twitty Nursery tract in 1948, and Crain became involved in the business in 1955. In 1998, Crain sold the Twitty Nursery tract to his son-in-law. Crain testified he leased the field currently owned by Wright from 1963 until 1977 or 1978. Crain testified as follows:

[Wright's Counsel]: Who built that road?

[Crain]: I did.

[Wright's Counsel]: When did you build it?

[Crain]: When we—back when we started that farm. The old road was

made under the Texas Probate Code." Tex. Health & Safety Code Ann. § 576.002 (Vernon 2003). Since there was no claim or evidence of incompetency of any prior owners, we conclude that element was conclusively satisfied. The public's long and continued use of Cherry Lane, without contrary evidence, also conclusively establishes the public acceptance and public benefit elements. Acceptance of a dedication can be implied from public use of the land. *Viscardi v. Pajestka*, 576 S.W.2d 16, 19 (Tex.1978); *Stein*, 53 S.W.3d at 41–42; *Gutierrez v. County of Zapata*, 951 S.W.2d 831, 842 (Tex.App.-San Antonio 1997, no writ); *see Camilla Twin Harbor Vol. Fire Dep't, Inc. v. Plemmons*, 998 S.W.2d 413, 415 (Tex.App.-Beaumont 1999, no pet.). Because the Reeds conclusively proved the public continuously used the road for at least twenty-five years before Wright's 1983 purchase of the property, the evidence conclusively establishes that the public accepted the implied dedication of Cherry Lane. Thus, even if the presumption supplies only the first element involving the intention of the landowner, the evidence conclusively established that the remaining elements of implied dedication were met before Wright's purchase of the property.

there, but it wasn't much. And in order to get—in bad weather ...

[Wright's Counsel]: So at the time you built the road, who owned that dirt on which you were building the road.

[Crain]: I don't know.

[Wright's Counsel]: And that's what year when you're building that road?

[Crain]: It was back in probably '65.

Wright also claimed to have "built" the road. The testimony clearly indicates that Crain did not originate the road, he only improved it. Further, Cherry Lane appears by name on the plat of Meadow Brook Heights filed in 1951. The evidence conclusively establishes that the origin of the road is shrouded in obscurity and there is no evidence of the identity, nor any direct evidence of the intent, of the property's owner at the time the road was first established.

*B. There Was Long and Continuous Public Use of Cherry Lane Before 1983*

In addition to the obscurity of the road's origin, the uncontradicted evidence established that Cherry Lane had been used by the public for a long and continuous period before Wright's 1983 purchase of the property. Crain, Pam McKamie, Tiffin Reed, and Pete Reed testified that they had been familiar with the area since the late fifties or early sixties and that the public had used the road since that time. Crain testified the road had been used by members of the public, many of whose names Crain did not know. Tiffin Reed, Pete Reed's father, testified he had been familiar with the area since around 1951 and had lived

nearby since 1958. Tiffin Reed testified he had used Cherry Lane since 1958 and had never asked permission to do so. Ms. Goff stated in her deposition, which was introduced at trial, that there had never been a dispute concerning whether Cherry Lane was a public road and that they never requested permission to use it. According to McKamie, the daughter of the Goffs, anybody could use Cherry Lane any time they wanted. McKamie testified that her family had owned their tracts for approximately fifty-five or fifty-six years and that, until recently, her family had used Cherry Lane approximately twice a day since the 1950s. Crain testified that B.L. Benny, a radio announcer in Texarkana years ago, customarily drove down Cherry Lane in the morning to a spot where he read his newspaper and that a lot of "parkers" would use Cherry Lane at night. In addition, employees of Twitty Nursery as well as customers of Twitty Nursery used Cherry Lane to access certain parts of the nursery.

Wright presented no evidence disputing the public use of Cherry Lane before her purchase of the property in 1983. While Wright did testify that Bowie County has never maintained Cherry Lane,[8] she did not testify as to whether members of the public used Cherry Lane before she owned the property. All of the other witnesses called by Wright limited their testimony to events after 1983. But events after 1983 are not at the crux of this inquiry.[9]

When viewed in a light most favorable to the verdict, the evidence at trial conclu-

---

8. Whether the county maintained Cherry Lane was disputed at trial.

9. Once a dedication is accepted, a landowner cannot revoke the dedication or use the property contrary to the original purpose of the dedication. *See Lindner v. Hill,* 673 S.W.2d 611, 616 (Tex.App.-San Antonio 1984), *aff'd,* 691 S.W.2d 590 (Tex.1985); *Moody v. White,*

593 S.W.2d 372, 378 (Tex.App.-Corpus Christi 1979, no writ); *Edmiston v. City of Harlingen,* 347 S.W.2d 742, 744–45 (Tex.Civ.App.-San Antonio 1961, writ ref'd n.r.e.). "Once a road is dedicated to public use, that road remains subject to that use unless it is abandoned." *Lindner,* 691 S.W.2d at 592. Abandonment is not in issue here.

sively established that the public used Cherry Lane for at least twenty-five years before Wright purchased the property. That constituted long and continuous public use.[10]

*Conclusion*

Since the origin of the road is shrouded in obscurity, the evidence of long and continuous use by the public raises a presumption that Cherry Lane had been dedicated to public use. There is no evidence that rebuts the pre–1983 presumption of dedication.[11] Because we hold Cherry Lane is·a public road due to its implied dedication, we decline to address the remaining points of error raised by the Reeds. We reverse the judgment of the trial court and render judgment that Cherry Lane is a public road.

---

**10.** *Cf. O'Connor,* 339 S.W.2d at 882 (approximately seventy years); *Supak,* 56 S.W.3d at 790 (approximately sixty-seven years); *Steel v. Wheeler,* 993 S.W.2d 376, 379 (Tex.App.-Tyler 1999, pet. denied) (approximately fifty-seven years); *Graff,* 947 S.W.2d at 637 (approximately forty years); *Fazzino,* 836 S.W.2d at 274 (approximately sixty years); *Love v. Olguin,* 572 S.W.2d 17, 22 (Tex.Civ.App.-El Paso 1978, writ ref'd n.r.e.) (approximately forty-five years); *Compton v. Thacker,* 474 S.W.2d 570, 571–72 (Tex.Civ.App.-Dallas 1971, writ ref'd n.r.e.) (approximately twenty years of use on one portion of the road and over fifty years on the other portion).

**11.** Whether the public has used Cherry Lane *since* 1983 was the subject of conflicting evidence at trial.