# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-11-00723-CV

TEA Ranch, LP, through its General Partner, Thomas Everett Allen;
and Thomas Everett Allen, Individually, Appellants

v.

Jan Yates Boultinghouse, in her Capacity as
Executor of the Estate of Mack Yates, Appellee

FROM THE DISTRICT COURT OF LLANO COUNTY, 33RD JUDICIAL DISTRICT
NO. 13883, HONORABLE GUILFORD L. JONES III, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Jan Boultinghouse filed suit against Thomas Everett Allen (Tommy)[1] seeking,

among other things, a declaration that a public road had been established over Tommy's property.

After a trial, the district court entered a judgment incorporating the jury's findings granting the

requested declaration and stating that the road had not been abandoned. In addition, the district

court awarded Jan attorney's fees. Tommy appeals the judgment of the district court, and we will

affirm the judgment.

---

[1] Many of the individuals involved in this case share identical last names. In an effort to minimize confusion, we will refer to them by their first names when necessary. Although the style of this case lists Thomas Allen as a party, he refers to himself as Tommy Allen. To be consistent with his preference, we will refer to him as Tommy.

## BACKGROUND

The dispute in this case involves access to a roadway crossing privately owned land in Llano County. The events leading up to the dispute began in the 1930s. To provide context for the issues on appeal, we provide a description of the land involved as well as the individuals owning land in the area.

In 1932, several property owners petitioned the Commissioners Court of Llano County to establish a public road. Specifically, the petition stated that the proposed road was a class 3 road, was 20 feet wide, and was approximately 6½ miles long. Further, the petition generally set out the origin and termination points for the road and set out how the road traversed the land by reference to the petitioners' land over which the road spanned.[2] The petition asked the court to appoint a jury of view to "lay out and survey" the road. The appointed jury of view recommended that the road be established and prepared a report setting out the contours of the road. The report also listed the property owners that had relinquished their property for the establishment of the road. After reviewing the petition and the report by the jury of view, the Commissioners Court granted the petition.

---

[2] The handwritten petition requested that "a public road of the 3rd class, 20 feet in width, be established" and described the road as follows:

> Commencing at Allen Rileys place approximately two miles from Lone Grove on the Lone Grove and Baby Head road. Thence approximately one half mile across Rileys property. Thence approximately one half mile across Schneiders property. Thence approximately three hundred yards across Mrs. Whitts property. Thence approximately two miles across Rogers' property. Thence approximately three and one-half miles across Everetts property and ending at San Saba County line in Precinct No. 2 the whole distance being approximately six and one half miles.

The dispute in this case partially rests on whether the road described in the petition is the same roadway commonly referred to as County Road 216A ("CR-216A").[3] Portions of CR-216A cross privately owned land in Llano County, including land owned by Tommy. *See Allen v. Allen*, 280 S.W.3d 366, 371 (Tex. App.—Amarillo 2008, pet. denied). We will refer to Tommy's property as TEA Ranch. CR-216A travels through TEA Ranch and up to another ranch along the northern border. That ranch was owned by Mack Yates prior to his death and is now being run by Yates's daughter, Jan, who is the executor of the estate. This ranch will be referred to as Yates Ranch. The portion of CR-216A at issue here enters TEA Ranch and "traverses [TEA Ranch] in a north-south direction, terminating at the gate of the Yates Ranch." *Id.*

At several points along CR-216A, there are gates. For example, as mentioned above, there is a gate where CR-216A reaches Yates Ranch, and that gate is referred to as the Yates Gate. *Id.* In addition to that gate, Tommy has installed two gates along the road as it traverses his property. In 1974, Tommy placed a gate "[n]ear the center of" the current boundaries of [TEA Ranch]. *Id.* This gate is referred to as the 1974 Gate. At the time that the gate was installed, TEA Ranch was smaller, and the gate was along the southern border. After acquiring additional property along the southern border, Tommy installed another gate further south on CR-216A "[n]ear the point where it enters the southwest corner of" the now larger TEA Ranch. *Id.* That gate is referred to as the 1987 Gate. In 1974, Tommy started locking the 1974 Gate out of concern for his mother who lived on TEA Ranch. *Id.* Later, Tommy moved the lock to the 1987 Gate. *Id.* Over the years, the type of lock used has shifted from a combination lock to a lock with a key. *Id.*

---

[3] It is not entirely clear from the record how the road became designated as CR-216A. *See Allen v. Allen*, 280 S.W.3d 366, 374 n.3 (Tex. App.—Amarillo 2008, pet. denied). But for ease of reading, we will refer to the road by that name.

In response to a dispute concerning a different roadway, some of Tommy's neighbors filed suit against him, and Jan intervened in the suit "in her representative capacity." In the suit, Jan sought a declaration that CR-216A is a public road. *Id.* at 372. In addition, she named Llano County as a defendant and alleged that it failed to provide maintenance for CR-216A and to keep it open to the public. *Id.*

Subsequent to the suit being filed, Jan and Tommy filed cross-motions for summary judgment. *Id.* After reviewing the motions, the district court declared in an interlocutory order that CR-216A was a public road and that it had been dedicated to the public in 1932 through the proceeding before the Commissioners Court. *Id.* After the district court issued its summary-judgment ruling regarding CR-216A, the issues raised by the other plaintiffs were tried before a jury. *Id.* At the conclusion of the trial, the jury found, among other things, that no portion of CR-216A had been abandoned. *Id.* In light of the jury's determinations, the district court entered a judgment incorporating its prior summary-judgment ruling as well as the jury's decision. *Id.* Tommy appealed the district court's judgment, but Llano County did not. *Id.*

In his appeal, Tommy challenged the declaration regarding CR-216A. *Id.* After examining the summary-judgment evidence, the appellate court determined that the record did "not conclusively prove that CR-216A was established in the 1932 proceedings, or that those proceedings established its course through the [TEA Ranch]." *Id.* at 377. In light of this determination, the court remanded the case for further proceedings. *Id.* at 384.

After the remand, the other plaintiffs settled with Tommy, and Jan was the only remaining plaintiff. On remand, Jan again argued that CR-216A "has been designated and maintained

4

by Llano County as a public or county roadway and used and traveled by the general public." In her suit, Jan also sought injunctive relief prohibiting Tommy from interfering with the public's ability to use CR-216A. In addition, she asked for an award of attorney's fees.

After a trial, the jury determined that the portion of CR-216A starting at the 1987 Gate and ending at the Yates Gate was part of the road established in the Commissioners Court, that CR-216A was dedicated to public use prior to the lawsuit, that the road had not been abandoned, and that Jan was entitled to attorney's fees incurred during trial as well as fees for any later appeals. Subsequent to the jury reaching its decision, the district court issued its final judgment incorporating the jury's findings and ordering Tommy to not install any new gates on CR-216A, maintain any gates on CR-216A, lock any gates on CR-216A, create any other obstructions on CR-216A, or make CR-216A impassable. In addition, the district court ordered Llano County to maintain CR-216A and to keep it "open and free from obstructions." Finally, the district court awarded Jan the attorney's fees calculated by the jury.

Tommy appeals the judgment of the district court.

**DISCUSSION**

In four issues on appeal, Tommy challenges the district court's judgment. First, he argues that the jury's determination stating that the portion of CR-216A at issue was included as part of the road established in the Commissioners Court did not have the effect of establishing a cognizable road. Second, he asserts that the jury's determination that CR-216A was dedicated to public use was not supported by legally or factually sufficient evidence. In his brief, Tommy analyzes these two issues jointly and treats them both as a sufficiency challenge, and we will address

5

those issues in the same manner. Third, he contends that the jury's determination that CR-216A had not been abandoned is not supported by factually sufficient evidence. Finally, he insists that the award of attorney's fees should be vacated. We will address these issues in the order raised.

**Sufficiency of the Evidence of the Jury's Road Determinations**

In his first two issues on appeal, Tommy raises various challenges to the jury's determinations regarding CR-216A.

*Challenge to the Commissioners Court's Establishment of a Road*

In his first group of assertions, Tommy challenges the propriety of the Commissioners Court's establishment of a road in 1932. Specifically, he argues that to properly dedicate land for a road, either expressly or impliedly, several elements must be but were not met. For both express and implied dedications, the following four elements must be satisfied: "(1) the person making the dedication must have the ability to do so; he must have fee simple title before he can dedicate his property; (2) there must be a public purpose served by the dedication; (3) the person must make either an express or implied offer; and (4) there must be an acceptance of that offer." *Linder v. Hill*, 673 S.W.2d 611, 616 (Tex. App.—San Antonio 1984), *aff'd*, 691 S.W.2d 590 (Tex. 1985); *see also Lambright v. Trahan*, 322 S.W.3d 424, 431 (Tex. App.—Texarkana 2010, pet. denied) (explaining that express dedications are generally accomplished by written instrument); *Reed v. Wright*, 155 S.W.3d 666, 672 n.6 (Tex. App.—Texarkana 2005, pet. denied) (setting out proof needed for implied dedications). In his brief, Tommy contends that the evidentiary documents offered to the Commissioners Court in 1932, including the petition for a public road, did not establish the land

6

owners' intent to donate the land or the public's acceptance of the offer of dedication.[4] Similarly, Tommy urges that the description of the road included in the petition before the Commissioners Court was not specific enough to properly convey land.

Tommy's evidentiary arguments regarding the Commissioners Court's judgment are not jurisdictional challenges to the Commissioners Court's judgment. "All errors other than jurisdictional deficiencies render the judgment merely voidable, and such errors must be corrected on direct attack." *Solomon, Lambert, Roth & Assocs., Inc. v. Kidd*, 904 S.W.2d 896, 900 (Tex. App.—Houston [1st Dist.] 1995, no writ); *see also PNS Stores, Inc. v. Rivera*, 379 S.W.3d 267, 271 (Tex. 2012) (explaining that voidable judgments may only be challenged by direct attack). The Commissioners Court's judgment established a public road in Llano County and was not appealed, and the time for directly attacking that judgment has long since passed.

In his brief, Tommy also argues that the Commissioners Court's judgment is subject to collateral attack. A judgment is void and, therefore, subject to collateral attack when the trial court had no jurisdiction over the parties or the property, had no jurisdiction over the subject matter, had no jurisdiction to enter the judgment at issue, or had no capacity to act. *PNS Stores, Inc.*, 379 S.W.3d at 272. Tommy asserts that the Commissioners Court's judgment is subject to collateral attack because the documents presented "lacked legally sufficient reference to the dedicating

---

[4] On appeal, Tommy notes that the establishment of the public road in 1932 was based on conveyances from the affected landowners at the time but that those conveyances were not made part of the record in 1932. Similarly, he argues that the Commissioners Court did not have a survey or field notes concerning the road. Referring to these alleged deficiencies, Tommy contends that the absence of this type of evidence was fatal to "the proof of dedication as a matter of law."

parties or the property involved." Accordingly, Tommy insists that the Commissioners Court lacked jurisdiction over the parties and the subject matter of the proceeding.

We disagree. At the relevant time, Commissioners Courts had the authority to establish public roads, including by a petition filed by property owners owning land over which the road would traverse. *See* Act of Feb. 2, 1884, 18th Leg., 1st C.S., ch. XI, § 1, art. 4360, 1884 Tex. Gen. Laws 551, 551 (bestowing on Commissioners Courts of counties power to lay out and open public roads), *and* Act of Feb. 2, 1884, 18th Leg., 1st C.S., ch. XIII, § 1, arts. 4360-4390c, 1884 Tex. Gen. Laws 552, 552-57 (authorizing Commissioners Courts to open public roads, including by petition of property owners, and requiring jury of view to lay out road), *repealed by* Act of May 20, 1983, 68th Leg., R.S., ch. 288, § 2, 1983 Tex. Gen. Laws 1431, 1526, *and* Act of Apr. 21, 1995, 74th Leg., R.S., ch. 165, § 24, 1995 Tex. Gen. Laws 1024, 1870. Accordingly, the Commissioners Court had jurisdiction over the subject matter of the proceeding.

Moreover, during the trial in this case, Wayne Hutto, the owner of a title company, testified that the individuals who signed the petition to dedicate land for the road owned property in Llano County, and our review of the record in this case revealed nothing that would indicate that the Commissioners Court did not have jurisdiction over those parties. In light of the testimony and the remainder of the record, we cannot agree with Tommy's assertion that the Commissioners Court did not have jurisdiction over the parties to the proceeding.

For these reasons, we do not believe that the Commissioners Court's judgment is subject to the type of collateral attack suggested by Tommy. Although Tommy was free to and did challenge whether the road established by the Commissioners Court is the road that traverses TEA

8

Ranch, he did not have the ability to challenge in a collateral attack the Commissioners Court's establishment of a public road in 1932. That prohibition against collateral attacks seems particularly warranted in circumstances like those present in this case where the prior judgment is 80 years old and is based on evidence that was even older.

*Challenge to Whether the Road Traverses TEA Ranch*

In his first two issues, Tommy also challenges the legal and the factual sufficiency of the evidence establishing that the portion of CR-216A traversing TEA Ranch is part of the public road established through the 1932 proceeding.[5]

When evaluating the legal sufficiency of the evidence, "appellate courts must view the evidence in the light favorable to the verdict, crediting favorable evidence if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not." *See City of Keller v. Wilson*, 168 S.W.3d 802, 807 (Tex. 2005). The evidence presented at trial is legally insufficient if the record disclosed one of the following situations: "'(a) a complete absence of evidence of a vital fact; (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (c) the evidence offered to prove a vital fact is no more than a mere scintilla; (d) the evidence establishes conclusively the opposite of the vital fact.'" *Id.* at 810

---

[5] The road established in the 1932 proceeding ended at the San Saba County line and went over what is now a portion of Yates Ranch. During the trial, testimony was introduced establishing that a gate was installed across the road at the boundary between Yates Ranch and TEA Ranch. Moreover, evidence was also presented showing that the Yates Gate had been locked for decades and that members of the public had not been allowed to travel through the Yates Gate. After the trial, the jury determined that the road traversing TEA Ranch and ending at the Yates Gate was a public road and made no additional finding regarding the road on the other side of the Yates Gate.

(quoting Robert W. Calvert, *"No Evidence" & "Insufficient Evidence" Points of Error*, 38 Tex. L. Rev. 361, 362-63 (1960)). Ultimately, the test is "whether the evidence at trial would enable reasonable and fair-minded people to reach the [judgment] under review." *Id.* at 827. For factual-sufficiency reviews, appellate courts "must consider and weigh all the evidence, and should set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). In performing this review, an appellate court "may not reverse merely because [it concludes] that the evidence preponderates toward a different answer." *McMillin v. State Farm Lloyds*, 180 S.W.3d 183, 201 (Tex. App.—Austin 2005, pet. denied). Under both standards of review, the fact-finder is the sole judge of witnesses' testimony as well as the weight to be given to their testimony. *City of Keller*, 168 S.W.3d at 819; *McDonald v. Dankworth*, 212 S.W.3d 336, 339 (Tex. App.—Austin 2006, no pet.).

During the trial, Tommy denied that the roadway traversing TEA Ranch was the road established by the Commissioners Court. In fact, he testified that the road leading up to the Yates Gate was moved by an agreement of the various property owners. Further, he explained that he "periodically" used the road leading up to the Yates Gate as an airstrip and that he used the road for aviation training while he was a member of the Texas Army National Guard. In addition, Tommy related his belief that the road established by the Commissioners Court at one time extended to the 1974 Gate but currently extends only to the 1987 Gate, and he denied that the road extended any further into TEA Ranch.

In addition to Tommy's testimony, other witnesses testified regarding whether the portion of CR-216A traversing TEA Ranch is part of the road established by the Commissioners

10

Court. Specifically, Hutto testified that after reviewing the relevant records, title information, and maps, he came to the conclusion that the road traversing TEA Ranch was the road established by the Commissioners Court. When explaining how he reached this conclusion, Hutto stated that his conclusion was premised on his determination that the people named in the road minutes and listed in the petition to establish the road owned the property over which the road would run. In addition, he related that the County's historical maps showed a road traversing TEA Ranch. However, Hutto did admit that his conclusion was "educated speculation," that the road's starting point as described in the road minutes was uncertain, and that the descriptions in the documents regarding the direction of the road and its length were not clear and used estimates. In addition, Hutto conceded that he was only able to ascertain the physical location of the road established by the Commissioners Court by the use of the County's maps.

After Hutto concluded his testimony, a land surveyor, Fred Thompson, testified regarding the portion of CR-216A at issue. In his testimony, Thompson explained that he reviewed several maps and aerial photos of the area at issue that had been made at various points in time and also reviewed the relevant deeds and other public records. During his testimony, Thompson related that the maps made after the 1932 proceeding showed a roadway crossing TEA Ranch, and many of those maps as well as aerial photos taken at various times were admitted into evidence. Further, he explained that he performed a survey of the land and CR-216A and compared the portion of CR-216A crossing TEA Ranch with the road described in the 1932 proceedings. When summarizing his comparison, he testified that after performing his review, his opinion was "that there's a very high probability that the roadway that is on the ground is that same roadway described in the 1932

11

document." During his testimony, Thompson also discussed a map of the area that he created that showed that the description of the road from the 1932 proceedings generally matched the actual location of the road. In addition, Thompson explained that although the road did not prominently appear in an aerial photograph taken in 1938, he believed that the road was there but was not readily observable due to technological limitations existing at the time that the photo was taken.

Although Thompson testified that it was likely that the portion of CR-216A crossing TEA Ranch was part of the road established in 1932, Thompson also admitted that his assertion that the road generally followed the description from the 1932 proceedings was based on his observation of where the road currently is. In other words, he related that although the 1932 description generally sets out various directions and distances for the road, it does not specify where there are turns or bends in the road. Thompson also admitted that the measurements from the 1932 proceedings would be a better fit if the beginning point had been 1/10th of a mile north of where the roadway traversing TEA Ranch started.

Bearing in mind that the fact-finder is the sole judge of the witnesses' testimony and of the weight to be given to their testimony under both a legal and a factual sufficiency review, *City of Keller*, 168 S.W.3d at 819; *McDonald*, 212 S.W.3d at 339, we must conclude that the evidence presented at trial would allow "reasonable and fair-minded people to reach the" decision made by the jury, *City of Keller*, 168 S.W.3d at 827, and that the jury's verdict is not "so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust," *Cain*, 709 S.W.2d at 176. Accordingly, we believe that the evidence is legally and factually sufficient to establish that the portion of CR-216A traversing TEA Ranch is part of the public road established by the Commissioners Court in 1932.

12

*Exclusion of Testimony*

In his first and second issues, Tommy also challenges the district court's decision to refuse to admit specific testimony from Gary Howell, who was an administrator for Llano County Road and Bridge. The testimony was presented as an offer of proof by reading Howell's prior deposition testimony. In his deposition, Howell explained that he was asked to review County records related to CR-216A and that during his review he did not find any field notes describing the road, any record establishing where the road started and ended, or any document showing that the landowners involved in the 1932 proceeding actually conveyed property to Llano County. When Tommy attempted to elicit similar testimony from Howell during trial, Jan objected and argued that the testimony was an impermissible collateral attack on the 1932 judgment from the Commissioners Court, and the district court sustained the objection. On appeal, Tommy contends that the district court erred by refusing to admit the disputed portion of Howell's testimony because the testimony was necessary to show that "the 1932 County Commissioners' Court proceedings are incomplete and legally insufficient" because there was no evidence of an intent by the landowners to donate their property for a public road.

Generally speaking, appellate courts review a trial court's decision to admit or exclude evidence under an abuse-of-discretion standard. *Exxon Pipeline Co. v. Zwahr*, 88 S.W.3d 623, 629 (Tex. 2002); *Commerce & Indus. Ins. Co. v. Ferguson-Stewart*, 339 S.W.3d 744, 746 (Tex. App.—Houston [1st Dist.] 2011, pet. denied). A trial court abuses its discretion when it acts without regard to any guiding rules or principles, and appellate courts uphold the ruling if there is a legitimate basis for it. *Commerce & Indus. Ins. Co.*, 339 S.W.3d at 746-47. In order for an appellate

13

court to reverse a judgment based on an error in the admission or exclusion of evidence, the requesting party must show that the trial court committed an error and that the error probably caused the rendition of an improper judgment. *Pickett v. Texas Mut. Ins. Co.*, 239 S.W.3d 826, 839 (Tex. App.—Austin 2007, no pet.); *see* Tex. R. App. P. 44.1(a).

By his own admission, Tommy asserts that he wanted the evidence admitted in order to attack the 1932 judgment by the Commissioners Court. As discussed previously, Tommy has not shown that the judgment is subject to a collateral attack. Accordingly, we cannot conclude that the district court abused its discretion by refusing to admit the challenged portion of Howell's testimony.

In light of our previous determinations, we overrule Tommy's first and second issues on appeal.

**Sufficiency of the Evidence of the Jury's Abandonment Finding**

As mentioned previously, the jury found that the 1932 Commissioners Court established a public road traversing TEA Ranch and that the roadway had not been abandoned. In his third issue on appeal, Tommy challenges the factual sufficiency of the jury's finding that the roadway had not been abandoned. *See Cain*, 709 S.W.2d at 176 (setting out standard for factual-sufficiency reviews). Because Tommy bore the burden of proof regarding the abandonment issue, he concedes that to prevail on this issue, he must show that the jury's finding is against the great weight and preponderance of the evidence. *See Urista v. Bed, Bath & Beyond, Inc.*, 245 S.W.3d 591, 601 (Tex. App.—Houston [1st Dist.] 2007, no pet.); *see also Maples v. Henderson Cnty.*, 259 S.W.2d 264, 267 (Tex. Civ. App.—Dallas 1953, writ ref'd n.r.e.) (explaining that party asserting abandonment must prove elements).

14

As discussed in the prior issue, the 1932 Commissioners Court established a public roadway that traversed TEA Ranch. "Once a road is dedicated to public use, that road remains subject to that use unless it is abandoned." *Betts v. Reed*, 165 S.W.3d 862, 870 (Tex. App.—Texarkana 2005, no pet.). Under the Transportation Code, a county road may be deemed abandoned "when its use has become so infrequent that one or more adjoining property owners have enclosed the road with a fence continuously for at least 20 years." Tex. Transp. Code § 251.057(a). In addition to statutory abandonment, a road may be abandoned under common law. "To show common-law abandonment, one must show intent to abandon and acts of relinquishment." *Betts*, 165 S.W.3d at 871. Stated differently, a road is abandoned under common law when the use for which the road was dedicated becomes impossible, "'or so highly improbable as to be practically impossible, or where the object of the use for which the property is dedicated wholly fails.'" *Id.* (quoting *Griffith v. Allison*, 96 S.W.2d 74, 77 (1936)).

When challenging the sufficiency of the evidence, Tommy contends in his brief that the evidence presented during trial demonstrated that no one used the road, that the road was "practically impassable," and that gates had been installed at various points along the road. Further, although Tommy admits that neighbors were given access, he asserts that the evidence showed that the gates had been locked to prevent public use. As support for these assertions, Tommy points to portions of his testimony during trial, to the testimony of some of his current and former neighbors, to the testimony of an individual serving in the Texas Army National Guard, and to photographs of the roadway submitted by Jan. Regarding those photographs, Tommy urges that they show that the road has not been maintained and "clearly show[] that there is no road either accessible to or being used by the public."

15

During the trial, Tommy testified that a Llano County Commissioner informed him that the road traversing TEA Ranch was a private and not a public road. Further, he discussed that he installed the 1974 Gate and later installed the 1987 Gate. Additionally, he explained that he put a combination lock on the 1974 Gate and a regular lock on the 1987 Gate. When explaining why he put locks on the gates, he testified that he installed them out of concern for his elderly mother who lived on the property and to prevent trespassers from entering the property. In addition, Tommy testified that no one from the County ever told him that he was not allowed to have gates on the road. In fact, he stated that from the time that the 1987 Gate was built to the time of the first lawsuit in 2004, no one protested his decision to lock the gate. In addition, Tommy related that the Yates Gate had been shut since the 1950s and that he was unaware of anyone from the Yates family ever using the road traversing TEA Ranch. Moreover, he explained that although his neighbors had permission to use the roadway, the roadway was not open to the public. As further support for the idea that the road was not public, Tommy discussed the fact that when the County wanted to place a communications tower on his property, it entered into a lease agreement with him that allowed the County to install the equipment and to have access to it. In other words, Tommy contends that the agreement would not have been necessary if the County otherwise had access to the road.

In his testimony, Tommy also described how his father built an airstrip in the 1960s along the path leading up the Yates Gate and stated that the County did not maintain that portion of the roadway. As discussed previously, Tommy explained that he landed planes on the airstrip. Moreover, Charles Sawers, who also served in the Texas Army National Guard, testified that he landed on the airstrip on two occasions. Furthermore, although Tommy admitted that the County

16

had installed low-water crossings along the road as well as cattle guards, he insisted that the County only did that because his family allowed the County to gather caliche from their land to be used elsewhere in the County. In addition, he related that although the County had maintained other parts of the road by grading it, a Llano County Commissioner informed him years ago that the County would no longer maintain the portion of the road going across TEA Ranch. Similarly, a former employee of Llano County, Gordon Hodges, testified that he worked to maintain the roads in Llano County from 1976 to shortly before the trial and that although the County used to maintain the roadway all the way up to the Yates Gate, the County stopped maintaining the road after Tommy installed the 1987 Gate.

As further support for the idea that the roadway had been abandoned, Tommy points to testimony from various neighbors. First, he discusses the testimony of Jan and her husband Kenneth Boultinghouse indicating that the last time that either of them had used the roadway was in the 1960s or the 1970s. In addition, because of when she stopped using the road, Jan admitted that she would have had no knowledge regarding the 1974 Gate or the 1987 Gate. Second, Tommy refers to the testimony of Mark Martin whose family purchased a ranch near TEA Ranch in the 1950s. In his testimony, Martin explained that his family used the road to cross TEA Ranch but that he did not have knowledge of anyone using the road other than individuals living near TEA Ranch.[6] Third,

---

[6] In his appellate briefs, Tommy points to testimony from Martin indicating that a gate on the road was continuously locked. But after reading the record, we believe that these portions of Martin's testimony refer to the Yates Gate and not to the 1974 or 1987 Gates. Moreover, Martin explained that the road traversing Yates Ranch was a private roadway past the Yates Gate.

Tommy mentions the testimony of another neighbor owning land near TEA Ranch, Andrew Allen.[7] In his testimony, Andrew stated that the road had not been used as a public road since the 1987 Gate was installed.

However, in addition to the testimony relied on by Tommy in his briefs, Tommy also testified that the 1974 Gate was not always shut and that people "could've driven through there when it was open till they got to the Yates [Gate], . . . which was always locked." He also explained that County employees were given the combination to the lock on the 1974 Gate and were allowed to enter the property to collect caliche. Further, he admitted that he did not keep the gates locked all the time and that the Yateses and other neighbors may have used the road crossing TEA Ranch. Tommy testified that he gave Andrew and his wife a key to the lock on the 1987 Gate. During his testimony, Tommy admitted that when he purchased a portion of what is now TEA Ranch, the deed specified that the road in dispute is a public road. In addition, Tommy testified that he never petitioned to have the road closed and conceded that he benefitted from the County's decision to install low-water crossings and cattle guards on his property and from the County's decision to maintain the roadway until he installed the 1987 Gate.

In addition, current and former neighbors testified to using the road traversing TEA Ranch. First, Andrew testified and explained that he owns land that is next to TEA Ranch. Further, he stated that from the time that his family acquired their ranch, they drove over the road crossing TEA Ranch to get to their land. In fact, he described the use as continuous from the 1970s to the

_____

[7] Although Tommy and Andrew share last names, they are not related to one another. *See Allen*, 280 S.W.3d at 370 n.1.

18

year before trial. Moreover, Andrew testified that although Tommy installed a lock on the 1987 Gate, the gate was not continuously locked.

In addition to the testimony from Andrew, other current and former neighbors testified about their use of the road. Although Tommy correctly points out that their testimony indicated that they stopped using the road prior to the installation of the 1987 Gate, "[m]ere nonuse is not sufficient to constitute abandonment." *Betts*, 165 S.W.3d at 871. Specifically, Joe Yates, who is the stepbrother of Jan, testified that he regularly used the road to go to Yates Ranch, that he did not remember anyone ever telling him that the road was a private road, and that he did not recall there being any locked gates across the road. Similarly, Martin testified that his family purchased a ranch near TEA Ranch in the 1950s and that his family drove on the road through TEA Ranch. Further, Martin explained that he believed that it was a county road. In addition, Kenneth testified that he has worked on Yates Ranch for decades and that during his employment, he has used the road for various reasons. Moreover, he related that when he used the road, he was never informed that it was private property or that he could not use it. Finally, Jan testified that she grew up on Yates Ranch, that her family traveled on the road crossing TEA Ranch for a variety of reasons, and that she believed that the road was "for the public to use."

In addition to the testimony describing the use of the road, testimony was also introduced regarding the County's treatment of the property. As previously discussed, the County stopped maintaining the road after the 1987 Gate was installed, but Howell, an administrator for Llano County Road and Bridge, testified that the County only maintains public roads, not private ones, and that the County had maintained the road in question and only stopped because Tommy

19

installed the 1987 Gate. Furthermore, a county's failure to maintain a road is not sufficient to establish abandonment. *See id.* Moreover, two retired employees for the County, Nathan Garrett and Gordon Hodges, testified that when the County maintained the road, the road was maintained all the way to the Yates Gate, and Howell stated that he has driven the road all the way to the Yates Gate as recently as the year before trial. Further, Howell explained that the County continues to maintain the road up to the 1987 Gate. Regarding the installation of the gates, Howell explained that property owners are allowed to install gates on third class roads and that the road established in the 1932 proceeding was a third class public road.

In his testimony, Howell also discussed how the Commissioners Court in 1993 included within its assessment of the total mileage of the County's roads the part of CR-216A that is located beyond the 1987 Gate and within TEA Ranch. This part of Howell's testimony was consistent with portions of Thompson's testimony in which he mentioned that in 1993 the Texas Department of Transportation asked all Texas counties to provide an accurate account of the mileage of their roads for funding purposes and that the Commissioners Court included in its assessment the portion of the road traversing TEA Ranch and ending at the Yates Gate. Further, Howell explained that when he researched the public documents related to the road, he did not find any documents suggesting that the road established in the 1932 proceeding had ever been closed. Finally, Howell acknowledged that he was currently unaware of any public traffic on the road past the 1987 Gate, but he also explained that some county roads simply end at someone's property. *See City of Houston v. Hughes*, 284 S.W.2d 249, 252 (Tex. Civ. App.—Austin 1955, writ ref'd n. r. e.) (explaining that determination regarding whether road is public is not determined by its length, by where it goes,

or by number of people using it and that road may be public even though one person benefits from it most).

As for the photographs that Tommy urges demonstrate that there is not a continuous roadway to the Yates Gate, we note that those photographs were admitted into evidence and that it is the jury's province to resolve conflicts in the evidence, *Del Lago Partners, Inc. v. Smith*, 307 S.W.3d 762, 764 n.2 (Tex. 2010), and to decide what weight to give the evidence presented, *see McDonald*, 212 S.W.3d at 339. Moreover, although one of the photographs does demonstrate that a portion of the roadway is covered by grass, other photographs do show the existence of a road over TEA Ranch. In addition, in resolving this conflict, the jury was also aided by the testimony regarding the existence and use of the road over TEA Ranch, by testimony concerning photographs of the road as well as aerial photographs of TEA Ranch, and by maps highlighting roads in the area.

Moreover, although there was testimony that portions of the road had not been recently maintained, no testimony was introduced establishing that the road could no longer be used for traveling purposes. *See Betts*, 165 S.W.3d at 871 (explaining that road was not abandoned when there was no evidence that it had become "practically impossible" to use it).

In light of the testimony summarized above, including testimony regarding past and current use of the road and testimony establishing that the gates across the road had not been continuously locked or closed, we cannot conclude that the jury's determination that the road had not been abandoned is against the great weight and preponderance of the evidence regardless of whether abandonment is considered under the Transportation Code or under common law. *See Urista*, 245 S.W.3d at 601; *see also Betts*, 165 S.W.3d at 871(explaining that one purpose of local

21

public road is to provide access to abutting property and concluding that public road was not abandoned when used for that purpose even though number of people using road had decreased). Accordingly, we overrule Tommy's third issue challenging the factual sufficiency of the jury's abandonment determination.

**Attorney's Fees**

In his fourth issue on appeal, Tommy asks this Court to vacate the attorney's fees award and remand the issue of attorney's fees in the event that we reverse the district court's judgment by sustaining any of his prior appellate issues. In light of the fact that we have overruled all of Tommy's other issues on appeal and will be affirming the district court's judgment, we overrule Tommy's final issue on appeal.

## CONCLUSION

Having overruled all of Tommy's issues on appeal, we affirm the judgment of the district court.

_____

David Puryear, Justice

Before Justices Puryear, Pemberton, and Rose
  Concurring Opinion by Justice Pemberton

Affirmed

Filed:   February 26, 2014